1  JEAN PIERRE NOGUES, SBN 84445, jpn@msk.com
   MITCHELL SILBERBERG & KNUPP LLP
2  2049 Century Park East, 18th Floor
3  Los Angeles, CA 90067
   Telephone:  (310) 312-3152
4  Facsimile:   (310) 312-3100

5
   MICHAEL F. BUCHANAN (*Pro Hac Vice* to be filed)
6       mbuchanan@pbwt.com
7  PETER A. NELSON (*Pro Hac Vice* to be filed)
        pnelson@pbwt.com
8  KADE N. OLSEN (*Pro Hac Vice* to be filed)
9       kolsen@pbwt.com
   CHRISTOPHER WILDS (*Pro Hac Vice* to be filed)
10      cwilds@pbwt.com
11 PATTERSON BELKNAP WEBB & TYLER LLP
   1133 Avenue of the Americas
12 New York, New York 10036
13 Telephone:  (212) 336-2350
   Facsimile:   (212) 336-2222
14

15 *Attorneys for Defendant Epiq Systems, Inc.*

16              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
17

18 BENJAMIN KARTER,                    | CASE NO. _____8:20-CV-1385_____
19 individually and on behalf of all
   others similarly situated,          | **NOTICE OF REMOVAL OF CIVIL**
20                                      | **ACTION TO FEDERAL COURT**
21          Plaintiff,                  | **[Declaration of Michael O'Connor Filed**
                                        | **Concurrently]**
22      v.
23
   EPIQ SYSTEMS, INC., a Missouri
24 corporation,
25
            Defendant.
26

27

28

NOTICE OF REMOVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TO THE JUDGES FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Epiq Systems, Inc. ("Epiq"), the only defendant in the above-titled action, hereby removes this action pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446 from the Superior Court for the State of California for the County of Orange to the United States District Court for the Central District of California.  The grounds for removal are set forth below.

1.     On May 26, 2020, Plaintiff Benjamin Karter ("Karter") commenced this action by filing a complaint in the Superior Court for the State of California for the County of Orange, captioned *Benjamin Karter v. Epiq Systems, Inc.*, Case No. 30-2020-01145269-CU-MC-CXC.

2.     On June 30, 2020, Karter served the Complaint and Summons on Epiq. Service was made on Epiq's registered agent for service of process at 1325 J Street, Suite 1500, Sacramento, CA 95814.  Karter's Proof of Service filed in the state court is attached hereto as **Exhibit A**.

3.     True and correct copies of the Summons and the Complaint are attached hereto as **Exhibit B**.  These are copies of all of the process, pleadings, and orders within the meaning of 28 U.S.C. Section 1446(a) served upon Epiq.

4.     This Notice of Removal is timely because it is filed within thirty days of service of process on Epiq.  *See* 28 U.S.C. § 1446(b); *Destfino v. Reiswig*, 630 F.3d 952, 956 (9th Cir. 2011) ("[E]ach defendant is entitled to thirty days to exercise his removal rights after being served.").

**PLAINTIFF'S COMPLAINT**

5.     Karter alleges that he is a citizen of California.  (Compl. ¶ 13.)

6.     Epiq is, and at all times since the filing of the state court action, has been a Missouri corporation with its principal place of business in New York.  (*Id.* ¶ 14.)

1

NOTICE OF REMOVAL

1    7.    Karter alleges, based on information and belief that Epiq was subject to

2    a ransomware attack.  Also, based on information and belief, Karter alleges that

3    "this malware and ransomware exfiltrated sensitive data on Epiq's network(s) and

4    the data is now in the hands of the perpetrators [of the attack]."  (*Id.* ¶ 5.)

5    8.    Karter further alleges, based on information and belief, that the

6    "information stolen from Epiq's network(s) included nonencrypted and nonredacted

7    personal information for Plaintiff Karter and the members of the alleged Class."  (*Id.*

8    ¶ 6 (internal citation omitted).)

9    9.    Karter asserts a claim under the California Consumer Privacy Act

10   ("CCPA"), Calif. Civ. Code § 1798.100, *et seq*.  (Compl. ¶¶ 32-38.)  Karter asserts

11   no other causes of action.

12   10.    Karter purports to sue on behalf of a class of all "California residents

13   whose nonredacted and nonencrypted personal information was compromised in the

14   data breach(es) affecting Epiq's network(s) in 2020."  (*Id.* ¶ 23.)

15   11.    Karter alleges that, although the "exact number of Class members is

16   unknown to Plaintiff at this time," it is "clear that joinder of each individual member

17   is impracticable."  (*Id.* ¶ 24.)

18   12.    Karter seeks "statutory damages in an amount not less than one

19   hundred dollars ($100) and not greater than seven hundred and fifty ($750) per

20   consumer per incident."  (*Id.* ¶ 28.)

21   13.    Karter also seeks an award of "damages, including punitive damages

22   where applicable, to Plaintiff and the Class in amounts to be determined at trial";

23   "injunctive and other equitable relief"; "reasonable litigation expenses and

24   attorneys' fees"; "pre- and post-judgment interest"; and "other and further relief as

25   equity and justice may require."  (*Id.* pp. 9-10.)

26   14.    Epiq denies all of these allegations.

27

28

## BASIS OF FEDERAL JURISDICTION UNDER
## CLASS ACTION FAIRNESS ACT

15.     This action is removable to this Court because federal diversity jurisdiction exists over Karter's claims pursuant to the Class Action Fairness Act of 2005, Pub L. 109-2, 119 Stat. 4 (2005) ("CAFA"), codified in various sections of Title 28 of the United States Code including 28 U.S.C. §§ 1332(d) & 1453.

16.     Congress enacted CAFA to enlarge federal jurisdiction over proposed class action litigations.  CAFA provides that a class action against a non-governmental entity such as Epiq may be removed to federal court if (a) the number of proposed class members is not less than 100; (b) any member of the proposed class is a citizen of a state different from any defendant; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5) & 1453(b).  As set forth below, all of the requirements for removal are satisfied.

## Class Size

17.     CAFA's first requirement, that the proposed class contain at least 100 members, 28 U.S.C. § 1332(d)(5), is satisfied.  Karter acknowledges that the members of each class are "numerous," and that Epiq "possesses personal information for thousands of consumers."  (Compl. ¶ 24.)

18.     Epiq provides a variety of legal services for law firms, corporations, and governmental agencies through legally distinct entities.  Epiq Class Action & Claims Solutions, Inc. ("Epiq Class Actions"), a legally separate subsidiary with its own employees, provides class action administration services and is the entity to which Karter allegedly provided his personal information (Compl. ¶ 20).  In connection with providing these services, Epiq Class Actions has collected information from more than 50,000 California residents.  (Declaration of Michael O'Connor ¶¶ 9-11.)

19.     The proposed class therefore contains at least 100 members.

## Minimal Diversity of Citizenship

20.     CAFA's second requirement, that any one member of the proposed class be a citizen of a state different from any defendant, 28 U.S.C. § 1332(d)(2), is satisfied.

21.     Karter alleges that he is a citizen of California.  (Compl. ¶ 23.)

22.     Epiq is, and at all times since the filing of the Complaint was, a Missouri corporation with its principal place of business in New York.  (*Id.* ¶ 30.) As a result, Epiq is a citizen of Missouri and New York. [1]

23.     Diversity of citizenship therefore exists between at least one proposed class member and the defendant, satisfying 28 U.S.C. § 1332(d)(2).

24.     The diversity of citizenship between Karter and Epiq not only satisfies CAFA's minimal diversity-of-citizenship requirement, but also precludes application of the "local controversy" or "home state" exceptions of 28 U.S.C. §§ 1332(d)(3) and (d)(4).

## Amount in Controversy

25.     CAFA's third requirement, that the aggregate amount in controversy exceed $5 million exclusive of interest and costs, 28 U.S.C. § 1332(d)(2), is satisfied.

26.     Although Epiq disputes all allegations in the Complaint and all liability and damages, Karter's allegations and prayer for relief, irrespective of their merits, place in controversy an amount greater than $5 million.

---

[1] Although the Complaint does not name Epiq Class Actions as a defendant (the company that allegedly had Karter's data), Epiq Class Actions is a separate Rhode Island corporation with its principal place of business in Beaverton, Oregon.  As a result, CAFA's minimal diversity requirement would be satisfied even if Epiq Class Actions had been named as a defendant and properly served, because Epiq Class Actions (a citizen of Oregon and Rhode Island) is diverse from Karter (a citizen of California).

27.    Where, as here, the complaint does not set forth a specific sum of damages sought, the Supreme Court has held a defendant need only make a "plausible allegation" that the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("evidentiary submissions" are not required).

28.    In determining whether the defendant has met its burden, "[a] district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy," or may look to "summary judgment-type evidence relevant to the amount of controversy." *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

29.    Karter purports to sue on behalf of a class of "all California residents" whose "personal information was compromised in the data breach(es) affecting Epiq's network(s) in 2020." (Compl. ¶ 23.)

30.    And on behalf of all class members, Karter seeks, *inter alia*, "statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident." (*Id.* ¶ 28.)

31.    Based on the demand for statutory damages alone, the amount in controversy exceeds CAFA's minimum. As part of its class action administration services, Epiq Class Actions maintains data from more than 50,000 residents of California. (O'Connor Decl. ¶¶ 9-11.) Applying the minimum statutory damages that Mr. Karter requests ($100), the amount of controversy would exceed $5 million.

32.    Moreover, Karter also seeks actual damages, including punitive damages (Compl. pp. 8-9), which significantly increases the amount in controversy. *See Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."). Courts

1   routinely apply a "1:1 ratio" of punitive to actual damages when calculating the

2   amount of punitive damages in controversy.  *See, e.g., Sloan v. 1st Am. Auto. Sales*

3   *Training*, 2017 U.S. Dist. LEXIS 58476, at *8 (C.D. Cal. Apr. 17, 2017) (applying a

4   "conservative 1:1 ratio").

5          33.    The same is true of Karter's demand for attorneys' fees.  *See*

6   *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007)

7   ("We have held that attorneys' fees were properly included in the amount in

8   controversy in a class action.").  In determining the amount of fees at issue, courts

9   typically assume counsel will recover 25% of any damages award.  *E.g., Giannini v.*

10  *Nw. Mut. Life Ins. Co.*, 2012 U.S. Dist. LEXIS 60143, at *14 (N.D. Cal. Apr. 30,

11  2012) (using a "25% of the common fund as a benchmark award for attorney fees"

12  in considering the amount in controversy).

13         34.    Finally, Karter requests injunctive relief (Compl. ¶¶ 12, 28, 37), which

14  adds significantly to the amount in controversy.  *See Int'l Padi, Inc. v. Diverlink*,

15  2005 U.S. App. LEXIS 14234, at *3-4 (9th Cir. July 13, 2005) ("[I]n determining

16  the amount in controversy, we may also include the value of the requested injunctive

17  relief to either party.").

18         35.    For all these reasons, the amount in controversy is in excess of $5

19  million.

20                                  *       *       *

21         36.    For the foregoing reasons, this action is properly removed to this

22  Court.

23

24         **WHEREFORE**, Epiq, the only defendant in the above-titled action,

25  respectfully removes this action from the Superior Court for the State of California

26  for the County of Orange to the United States District Court for the Central District

27  of California.

28

1

2     Dated:  July 29, 2020          JEAN PIERRE NOGUES
                                     MITCHELL SILBERBERG & KNUPP LLP
3

4                                    */s/ Jean Pierre Nogues*
                                         Jean Pierre Nogues
5                                    *Attorneys for Defendant Epiq Systems, Inc.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL