JEAN PIERRE NOGUES, SBN 84445, jpn@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067
Telephone:   (310) 312-3152
Facsimile:    (310) 312-3100

MICHAEL F. BUCHANAN (*Pro Hac Vice*)
      mfbuchanan@pbwt.com
PETER A. NELSON (*Pro Hac Vice*)
      pnelson@pbwt.com
KADE N. OLSEN (*Pro Hac Vice*)
      kolsen@pbwt.com
JEFFREY C. SKINNER (*Pro Hac Vice*)
      jskinner@pbwt.com
CHRISTOPHER WILDS (*Pro Hac Vice*)
      cwilds@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 336-2350
Facsimile:   (212) 336-2222

*Attorneys for Defendant Epiq Systems, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN KARTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EPIQ SYSTEMS, INC., a Missouri corporation,<br><br>Defendant. | CASE NO. 8:20-cv-01385-CJC-KES<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS<br><br>Date:      Oct. 5, 2020<br>Time:      1:30pm<br>Place:     Courtroom 9B<br>Judge:     Honorable Cormac J. Carney<br>Date Action Filed:    July 29, 2020 |

1

## **TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES ..................................................................ii

3  PRELIMINARY STATEMENT ......................................................... 1

4  STATEMENT OF RELEVANT FACTS ......................................... 3

5      **A.**    **Epiq Systems And Epiq Class Action Are Separate Entities**..........3

6      **B.**    **Epiq Class Action's Limited Used Of Consumer Data** .................. 4

7      **C.**    **Epiq Systems Suffers A Ransomware Attack** ................................. 6

8      **D.**    **The California Consumer Privacy Act** ............................................. 9

9      **E.**    **Karter's Complaint**.......................................................................... 10

10  ARGUMENT.......................................................................................... 12

11      **I.**    **Epiq Systems Is The Wrong Defendant** ....................................... 12

12          *A.*    *Karter Lacks Standing To Sue Epiq Systems*........................... 12

13          *B.*    *The Court Lacks Personal Jurisdiction Over Epiq*
14              *Systems*....................................................................................... 15

15          *C.*    *By Suing The Wrong Entity, Karter Fails To State A*
            *Cognizable Claim Against Epiq Systems*.................................. 17

16
17      **II.**    **The Complaint Fails To State A Claim For Relief** ....................... 18

18          *A.*    *The CCPA Does Not Apply to Epiq Systems* ........................... 18

19          *B.*    *Karter Does Not Plausibly Plead A Violation Of*
            *The CCPA* ................................................................................. 21

20          *C.*    *Amendment To Name Epiq Class Action Would Be*
21              *Futile* ......................................................................................... 23

22  CONCLUSION ..................................................................................... 25

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>

2

3

<u>Cases</u>                                                                                            <u>Page(s)</u>

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................21, 23

*Babadjanian v. Deutsche Bank Nat'l. Trust Co.*,
   No. CV 10-02580 MMM (RZx),
   2011 U.S. Dist. LEXIS 165392 (C.D. Cal. Mar. 29, 2011) ...........................23

*Beaird v. Gonzales*,
   495 F. Supp. 2d 81 (D.D.C. 2007)......................................................20

*Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.*,
   No. 2:19-CV-798-RAH-SMD,
   2020 WL 4016246 (M.D. Ala. July 16, 2020) ...................................22

*Blash v. Wells Fargo Bank*,
   No. SACV14-02069CJC (RNBx),
   2015 WL 12791376 (C.D. Cal. Feb. 26, 2015)...................................23

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ............................................................15

*Bowman v. Art Van Furniture, Inc.*,
   No. 17-11630, 2018 WL 6445389 (E.D. Mich. Dec. 10, 2018). .......................12

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007) ................................................14

*Coder v. Medicus Labs., LLC*,
   No. 4:14-CV-7, 2014 WL 2984052 (E.D. Tex. July 2, 2014)..........................19

*Conservation Force v. Salazar*,
   646 F.3d 1240 (9th Cir. 2011) ..........................................................18

*Covington v. Jefferson Cty.*,
   358 F.3d 626 (9th Cir. 2004)............................................................25

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .................................................................15, 17

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ....................................................................13

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) .......................................................3, 16

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

*Duran v. Maxim Healthcare Servs. Inc.*,
    No. CV 17-01072-AB (EX),
    2018 WL 5915644 (C.D. Cal. Mar. 9, 2018) ...................................................... 23

*Ebner v. Fresh, Inc.*,
    838 F. 3d 958 (9th Cir. 2016) ............................................................................... 18

*Equal Employment Opportunity Comm'n v. AutoNation USA Corp.*,
    No. CV 05-1575-PHX-ROS,
    2007 WL 9724419 (D. Ariz. May 3, 2007) ........................................................ 17

*Gaube v. Day Kimball Hosp.*,
    No. 3:13-CV-01845 VAB,
    2015 WL 1347000 (D. Conn. Mar. 24, 2015) .................................................... 19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ................................................................................... 15, 16

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ............................................................................. 14

*Helstern v. City of San Diego*,
    No. 13-CV-0321-LAB (RBB),
    2013 U.S. Dist. LEXIS 97707 (S.D. Cal. July 10, 2013) ............................ 21, 23

*Henderson v. Borough of Baldwin*,
    No. 15-1011, 2016 WL 5106945 (W.D. Pa. Sept. 20, 2016) ............................. 20

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ............................................................................................... 13

*Int'l Shoe Co. v. State of Wash.*,
    *Office of Unemployment Comp. & Placement*,
    326 U.S. 310 (1945) ............................................................................................. 16

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ....................................................................................... 15, 16

*Kirsch v. Lei Floor and Window Coverings, Inc.*,
    No. CV 16-00284 ACK-RLP,
    2017 WL 82468 (D. Haw. Jan. 9, 2017) ............................................................. 19

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) ............................................................................. 13

*Levy v. Continental Airlines, Inc.*,
    No. 07-1266, 2007 U.S. Dist. LEXIS 73027 (E.D. Pa. Oct. 1, 2007) ............... 19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................. 13

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ....................................................................... 15, 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

*McCrary v. Gutierrez*,
   528 F. Supp. 2d 995 (N.D. Cal. 2007)................................................25

*Mendia v. Garcia*,
   768 F.3d 1009 (9th Cir. 2014) ........................................................14

*Mo. ex rel. Koster v. Harris*,
   847 F.3d 646 (9th Cir. 2017) ..........................................................25

*Mohan v. La Rue Distrib.'s Inc.*,
   No. 06-CV-621 FB RLM,
   2007 WL 3232225 (E.D.N.Y. Oct. 31, 2007) .....................................19

*Oland v. Forever Living Prods. Int'l, Inc.*,
   No. CV 09-8039-PHX-MHM,
   2009 WL 5128658 (D. Ariz. Dec. 17, 2009)......................................17

*Perez v. Mortg. Elec. Registration Sys., Inc.*,
   959 F.3d 334 (9th Cir. 2020) ........................................................25

*Purely Driven Prod., LLC v. Chillovino, LLC*,
   171 F. Supp. 3d 1016 (C.D. Cal. 2016) ...............................................3

*Rush v. Savchuk*,
   444 U.S. 320 (1980) .....................................................................15

*Schwartz E Liquid v. OMW Techs. Inc.*,
   No. SACV19-00457-DOC(JDE),
   2019 WL 4459324 (C.D. Cal. June 13, 2019).................................3, 16

*Strautins v. Trustwave Holdings, Inc.*,
   27 F. Supp. 3d 871 (N.D. Ill. 2014).................................................22

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014).............................................................15, 16

*Wild v. Preventive Pest Control, LLC*,
   No. 19-cv-01420-CJC(SKX),
   2019 WL 2871155 (C.D. Cal. May 29, 2019).....................................16

**Statutes**

California Consumer Privacy Act,
   Cal. Civ. Code § 1798.100 et seq. .............................................*passim*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**<u>Other Authorities</u>**

Charles Alan Wright & Arthur R. Miller,
   13A *Federal Practice & Procedure* § 3531 (3d ed.) .........................................14

Lauren Davis, *The Impact of the California Consumer Privacy
   Act on Financial Institutions Across the Nation*,
   24 N.C. Banking Inst. 499 (2020). ....................................................................10

Defendant Epiq Systems, Inc. ("Epiq Systems") respectfully submits this memorandum of points and authorities in support of its motion to dismiss the Complaint of Plaintiff Benjamin Karter ("Karter") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

## PRELIMINARY STATEMENT

In late February 2020, Epiq Systems was the victim of a ransomware attack—a cyber-attack that utilizes malicious software to encrypt files on a victim's computers or network in order to extort a ransom payment. The attack severely disrupted the businesses of Epiq Systems and its subsidiaries by encrypting files—including some client data—across their networks. Epiq Systems and its subsidiaries worked diligently to respond to the attack, regaining access to maliciously encrypted files, restoring their systems, and remediating the attack in a matter of weeks. Following the attack and a subsequent investigation, Epiq Systems publicly disclosed that although some files were encrypted and its businesses were disrupted, it found *no evidence* that any data belonging to its clients—personal or otherwise—was exfiltrated or stolen in connection with the ransomware attack.

Ignoring the company's public statements and in what appears to be a brazen attempt to further exploit the attack Epiq Systems suffered, Karter filed this lawsuit seeking statutory damages for himself and a putative class of California consumers, claiming that his personal data was stolen during the attack. He alleges with no factual support whatsoever that his "nonencrypted and nonredacted" personal information is "now in the hands of hackers," along with the information of some unknown number of other California consumers.

There is no basis for—and no truth whatsoever to—Karter's claim. But even accepting Karter's baseless allegation that his personal information was stolen as

true for the purposes of this motion, his Complaint nonetheless fails and should be dismissed for multiple independent reasons.

*First*, Karter sued the wrong defendant. He alleges that he provided his personal information to Epiq Systems "in relation to a class action settlement which Epiq administered and in which Karter was a class member," but Epiq Systems does not administer class action settlements. Karter must have provided his personal information to a different corporate entity—Epiq Class Action & Claims Solutions, Inc. ("Epiq Class Action")—which does administer class actions. Karter therefore lacks standing to sue Epiq Systems, because his alleged injury is not fairly traceable to a company that did not even possess his personal information. Karter also fails to state a claim against Epiq Systems, for the same reason.

*Second*, because Epiq Systems could not have caused the harm alleged by Karter—since it never had his data—the Court also lacks personal jurisdiction over Epiq Systems. Karter has not alleged sufficient contacts between Epiq Systems and the State of California to support general jurisdiction, and because Epiq Systems was not involved in any suit-related conduct, Karter has failed to demonstrate that the Court has specific jurisdiction over Epiq Systems.

*Third*, Karter's allegations fail to state a claim against Epiq Systems, and any amendment to name Epiq Class Action as a defendant would be futile, because neither entity is a "business" covered by the California Consumer Privacy Act ("CCPA"). The CCPA only permits private lawsuits against covered "businesses," not "service providers." As Karter concedes in his Complaint, Epiq Systems and its subsidiaries are all providers of legal services to other businesses—they only receive and process individual consumer information on behalf of their clients and do not determine the purposes for using the individual consumer information that is maintained on their computer systems. Similarly, Epiq Class Action only receives

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

and uses personal information from individuals such as Karter to provide a legal service—class action administration—to its clients, which are law firms and class action defendants, not individuals like Karter. Epiq Systems and Epiq Class Action are thus, at most, "service providers" under the CCPA because they "process[] information on behalf of" their clients and obtain and use consumers' personal information only "for the specific purpose of performing the services specified in the contract[s]" with their clients. The Complaint does not *and cannot* allege any factual support to show that either Epiq Systems or Epiq Class Action is a covered "business" under the CCPA. Accordingly, even accepting Karter's allegations as true, he fails to state a claim against Epiq Systems and amendment would be futile because he would have no private right of action under the CCPA against Epiq Class Action.

For these reasons, the Court should dismiss the Complaint with prejudice.

## STATEMENT OF RELEVANT FACTS

### A. Epiq Systems And Epiq Class Action Are Separate Entities

Karter filed suit against and served his Complaint on Epiq Systems. Epiq Systems, a Missouri corporation with its principal place of business in New York, provides a variety of legal services for law firms, corporations, and government agencies. O'Connor Decl. ¶ 7.[1] Among other things, Epiq Systems assists its clients

---

[1] Declaration of Michael O'Connor, dated September 4, 2020. The Court may consider this declaration in determining Epiq Systems' factual challenges against subject matter jurisdiction and personal jurisdiction. *See, e.g.*, *Schwartz E Liquid v. OMW Techs. Inc.*, No. SACV19-00457-DOC(JDE), 2019 WL 4459324, at *2 (C.D. Cal. June 13, 2019) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)) (considering declaration in motion to dismiss for lack of personal jurisdiction); *Purely Driven Prod., LLC v. Chillovino, LLC*, 171 F. Supp. 3d 1016, 1018 (C.D. Cal. 2016) (considering declaration in factual attack on subject matter jurisdiction).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

in the collection of electronic data typically in the context of the discovery process, processes electronic discovery, and performs document review. *Id.*

Nonparty Epiq Class Action, a wholly-owned subsidiary of Epiq Systems incorporated in Rhode Island and with its principal place of business in Oregon, is a legally separate entity that operates independently from Epiq Systems. *Id.* ¶ 8. Epiq Class Action, as its name suggests, administers class action and mass tort settlements and judgments for litigants and courts alike. Among other functions, Epiq Class Action provides notice to class members, receives and processes class member opt outs, manages claims databases, resolves settlement claims, manages settlement funds, and provides award calculations and distribution services. *Id.*

These two companies—Epiq Systems and Epiq Class Action—are separate legal entities. Epiq Class Action has its own Federal Employer Identification Number and its own employees, who are paid by Epiq Class Action, not Epiq Systems. *Id.* ¶¶ 11–12. Epiq Class Action also has its own management team. *Id.* ¶ 10. Epiq Class Action has a different registered address and agent from Epiq Systems. *Id.* ¶ 9. To facilitate its class action services, Epiq Class Action has its own databases that are not accessible by Epiq Systems or other Epiq subsidiaries and develops and utilizes its own proprietary software applications that it uses exclusively. *Id.* ¶ 13. Epiq Class Action maintains its own balance sheet and financial and accounting records, separate from Epiq Systems. *Id.* ¶ 14. In several states, Epiq Class Action files its own taxes. *Id.*

**B.    Epiq Class Action's Limited Used Of Consumer Data**

Epiq Class Action is retained by law firms and class action defendants, and appointed by courts, to administer class actions. *Id.* ¶ 15. Epiq Class Action often receives information from individuals who opt in to class action settlements to enable the company to provide class action administration services—including

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

providing notice or distributing settlement payments or judgment proceeds. *Id.* ¶ 17. Depending on the nature of the case and the terms of the settlement, Epiq Class Action might receive an individual's name, address, or social security number. *Id.* Often this information is provided to Epiq Class Action by its clients—the law firms or corporate class action defendants—but in some cases it receives information directly from potential class members. *Id.*

Epiq Class Action maintains all sensitive information from class members in an encrypted form, at two levels. First, all databases containing personal information are themselves encrypted at rest. *Id.* ¶ 20. Second, within every database, all *fields* containing sensitive personal information, such as social security or account numbers, are also encrypted. *Id.*

Epiq Class Action only uses the information in its possession for the purposes of administering the class action on behalf of its clients. It does not independently determine the purposes or methods for processing the data, but rather is guided by its clients' needs and requirements. Epiq Class Action's contracts with its clients contain strict limitations on how and when Epiq Class Action may use class members' information. Specifically, Epiq Class Action's Standard Services Agreement—which is incorporated in its written client contracts—provides that the company "shall use" confidential information about class members "*only for the purposes of fulfilling their obligations hereunder*." *Id.* ¶ 18 (emphasis added). Further, the standard privacy policy that Epiq Class Action includes on websites where class members such as Karter submit claim applications, provides in part that,

> [i]n connection with the claims administration process, you may be asked to provide certain information, including, but not limited to, name, postal address, telephone number and transactional account data. *The*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

> *information collected will be used solely for the purposes of the Settlement and the claims administration process*, as governed by the Court.

*Id.* ¶ 19 (emphasis added).

## C.     Epiq Systems Suffers A Ransomware Attack

On February 29, 2020, Epiq Systems and its subsidiaries suffered a ransomware attack. Ransomware is a type of malicious software, or malware, designed to deny access to a computer system or data until a ransom is paid.[2] This malicious encryption can affect almost any kind of file or data, even if those files or data are already encrypted by the victim in the normal course of business.[3]

The ransomware attack on Epiq Systems and its subsidiaries involved a type of ransomware called RYUK and related malware called "TrickBot," which were deployed by malicious actors on the companies' computer networks. RYUK uses encryption to block access to a system, device, or file until a ransom is paid. It is often placed on a system by other malware, most notably TrickBot.[4] Once on a system, RYUK spreads through the network trying to infect endpoints and servers before beginning the encryption process. Unlike most data breaches, the *modus*

---

[2] The Cybersecurity and Infrastructure Security Agency, *Ransomware*, WWW.US-CERT.CISA.GOV, https://us-cert.cisa.gov/Ransomware (last visited Sep. 4, 2020).

[3] *See* Philip Bates, *Why Encrypting Your Data Won't Protect You From Ransomware*, MUO, (June 28, 2017), https://www.makeuseof.com/tag/encrypting-data-wont-protect-ransomware/.

[4] *See* Kimberly Goody, et al., *A Nasty Trick: From Credential Theft Malware to Business Disruption*, FIREEYE (Jan. 11, 2019), https://www.fireeye.com/blog/threat-research/2019/01/a-nasty-trick-from-credential-theft-malware-to-business-disruption.html.

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

*operandi* of the ransomware variant used in the attack on Epiq Systems and its subsidiaries is to disrupt businesses rather than steal personal data.[5]

As a result of the ransomware attack, some of the companies' servers and data were encrypted—for files that were already encrypted by Epiq Systems or its subsidiaries, double-encrypted—rendering them and the data on them inaccessible and unreadable to anyone. In response, Epiq Systems deployed multiple tools to thwart the attack, took its systems offline, and determined the nature and extent of the unauthorized activity on its and its subsidiaries' systems. As part of Epiq Systems' comprehensive response plan, it worked diligently to safely and securely restore its systems to full operations.[6]

Over the weeks that followed the ransomware attack, Epiq Systems provided periodic updates to its clients and the public about the attack and the company's response. In a March 26, 2020, statement on its website, Epiq Systems announced that "all client-facing systems globally are back up and running. We began restoring

---

[5] *See* Van Ta, Aaron Stephens, *It's Your Money and They Want It Now — The Cycle of Adversary Pursuit*, FIREEYE (Mar. 31, 2020), https://www.fireeye.com/blog/threat-research/2020/03/the-cycle-of-adversary-pursuit.html (noting that threat actors like the one involved in the ransomware attack on Epiq Systems and its subsidiaries cost organizations millions of dollars "due to business disruption and ransom payments," not data theft). Some ransomware attackers using ransomware variants other than RYUK—primarily a variant called Maze—have recently started to steal data in addition to encrypting files on the victim's systems. *See e.g.*, Malwarebytes Labs, *Maze: the ransomware that introduced an extra twist* (May 29, 2020), https://blog.malwarebytes.com/threat-spotlight/2020/05/maze-the-ransomware-that-introduced-an-extra-twist/.

[6] Epiq Systems, Epiq News, *Client Systems Restored* (March 26, 2020), https://www.epiqglobal.com/en-us/about/news/corporate/client-systems-restored.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

full functionality for client systems two weeks ago, and have now completed our restoration and hardening activities for all client-facing environments."[7]

Epiq Systems also announced that it had "found *no evidence that any client data was accessed, misused, or exfiltrated*,"[8] and that "[t]here has been no evidence of malicious activity in our system since March 1, 2020, and the attack did not impact our backup systems or data."[9]

Epiq Systems and its subsidiaries took significant steps to remediate the effects of the ransomware attack and harden its security environment. Among other things, the companies blocked known attacker IP addresses, reset compromised credentials, and performed scans of their computer systems to ensure that company and client data that was brought back online did not contain the identified malware or other indicators or evidence of compromise. In addition, Epiq Systems and its subsidiaries implemented stricter controls within their systems and imposed additional restrictions that permit only software that has been deemed safe to run.[10]

As of this date, all of Epiq Systems' and its subsidiaries' computer systems and access to all maliciously encrypted files have been restored.[11]

---

[7] *Id.*

[8] *Id.* (emphasis added). In an earlier update, dated March 19, 2020, Epiq Systems also disclosed that "we have found no evidence that any client data has been accessed, misused, or extracted." *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**D.**     <u>**The California Consumer Privacy Act**</u>

The CCPA is a sweeping new consumer privacy law that became operative on January 1, 2020. In relevant part, the CCPA permits California consumers to bring civil suits against a "business" for injunctive or declaratory relief and statutory damages between $100 and $750 "per consumer per incident or actual damages, whichever is greater." Cal. Civ. Code § 1798.150(a)(1)(A)–(C).

The CCPA's private right of action is limited to consumers "whose nonencrypted and nonredacted personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the *business's* violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action." *Id.* § 1798.150 (emphasis added).

The CCPA defines a "business" as a for-profit entity that "collects consumers' personal information or on the behalf of which that information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information." *Id.* § 1798.140(c)(1). The CCPA separately defines a "service provider" as an entity that "processes information on behalf of a business and" is a company "to which the business discloses a consumer's personal information for a business purpose pursuant to a written contract." *Id.* § 1798.140(v). A private citizen may sue a "business" under the CCPA, *id.* § 1798.150(a)(1), but not a "service provider"—which can only be sued by the California Attorney General, *id.* § 1798.155(b).

The CCPA's distinction between a "business" and a "service provider" is indicative of the law's primary concern with giving California residents more control over their personal information and its focus on regulating companies that

9

sell consumers' personal information.[12] For example, one of the statute's core privacy provisions requires *businesses*, not *service providers*, that sell personal information to provide consumers with notice of disclosure of personal information and the right to opt-out of such disclosures. *See id.* § 1798.120.

The CCPA also requires a consumer to provide an alleged violator written notice of the alleged CCPA violation, *id.* § 1798.150(b), and gives the business 30 days to "cure" the violation and provide the consumer with "an express written statement that the violations have been cured and that no further violations shall occur." *Id.* A consumer may only pursue statutory damages if the business does not cure the alleged violation and provide the required written statement. *Id.*

**E.    Karter's Complaint**

Karter's Complaint starts with what Epiq Systems readily admits: it was the victim of a ransomware attack earlier this year. (Compl. ¶ 5.) As Epiq Systems stated publicly, some of its computers and network were infected by TrickBot malware and RYUK ransomware. (*Id.* ¶ 4.)

The Complaint says that Karter submitted "a tax form containing [his] social security number to Epiq in relation to a class action settlement which Epiq administered and in which [he] was a class member." (*Id.* ¶ 20.)

Karter then alleges that the "malware and ransomware exfiltrated sensitive data on Epiq's network(s) and the data is now in the hands of the perpetrators." (*Id.* ¶¶ 5, 21.) This conclusory allegation, repeated several times throughout the Complaint, is the sum total of Karter's claim that *his* data was subject to "exfiltration, theft, or disclosure" (*id.* ¶ 21), a required element of a claim under the

---

[12] *See* Lauren Davis, *The Impact of the California Consumer Privacy Act on Financial Institutions Across the Nation*, 24 N.C. Banking Inst. 499, 503 (2020).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

CCPA. The Complaint provides no factual support whatsoever for the allegation that Karter's information was exfiltrated—and that allegation is contradicted by Epiq Systems' public statements about the attack. Karter does not claim to have conducted any factual investigation into whether his data was actually exfiltrated or acquired by third parties. Nor does he suggest that there is *any evidence* that his (or *anyone's*) personal information has been obtained by an unauthorized person or made available on the dark web or elsewhere as a result of the ransomware attack. Instead, Karter merely asserts that his information was stolen during the ransomware attack on Epiq Systems and its subsidiaries, and that he faces some unquantifiable "risk of identity theft" as a result. (Compl. ¶ 7.)

To support his CCPA claim, Karter also alleges that his personal data, which was supposedly exfiltrated, was "nonencrypted" and "nonredacted"—another required element of a claim under the CCPA. (*Id.* ¶ 6.) Karter merely parrots the statutory language without providing factual support or any indication of any investigation that he conducted to support that conclusory allegation.

The remainder of Karter's nine-page complaint is a rote recitation—often in long block quotes—of the language of the CCPA and the requirements to certify a class. Nowhere in the Complaint does Karter allege that Epiq Systems is a "business" under the CCPA.

With the same lack of detail, Karter also alleges that the Court has general jurisdiction over Epiq Systems "because Epiq routinely transacts business in Orange County and through the State of California" and "Epiq has repeated and sustained ties to this State." (*Id.* ¶ 15.)

Karter's sole claim is that Epiq Systems violated the CCPA. (*Id.* ¶¶ 32–38.) He purports to represent himself and a class of "[a]ll persons residing in California whose nonredacted and nonencrypted personal information was compromised in the

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

data breach(es) affecting Epiq's network(s) in 2020." (*Id.* ¶ 23.) He seeks injunctive relief "in the form of an order enjoining Defendant from continuing to fail to implement reasonable procedures to protect Plaintiff's and the Class's personal information" (*id.* ¶ 37), without specifying what such relief would entail or how Epiq Systems has failed to implement reasonable procedures to protect consumers' personal information. He also seeks "statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident." (*Id.* ¶ 38.)

## ARGUMENT

## I.    Epiq Systems Is The Wrong Defendant

Karter sued the wrong entity. The Complaint incorrectly names Epiq Systems as the Defendant. Karter alleges that he provided his personal information "to Epiq" (Compl. ¶ 20) in connection with his participation in a class action settlement, but that is not possible: Karter can only have provided his information to Epiq Class Action, the only corporate entity within the Epiq corporate family that provides such services.[13] These two entities are legally distinct and separate corporations.

Under Rules 12(b)(1) (subject matter jurisdiction), 12(b)(2) (personal jurisdiction), and/or 12(b)(6) (failure to state a claim against Epiq Systems), Karter's pleading failure means his Complaint must be dismissed.

### A.    Karter Lacks Standing To Sue Epiq Systems

Karter did not provide his personal information to Epiq Systems, so it is implausible for Epiq Systems to have been responsible for the alleged exfiltration of

---

[13] Even if Karter does not know the difference between the two corporate entities, his counsel certainly does, since they previously retained Epiq Class Action as a class action administrator. *See Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 WL 6445389 (E.D. Mich. Dec. 10, 2018).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1  Karter's information. Any "injury" Karter sustained could not have been caused by

2  Epiq Systems, and therefore the Court lacks Article III jurisdiction over Karter's

3  claim here.

4       Courts have "an obligation to assure [them]selves" of litigants' standing

5  under Article III. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006)

6  (internal quotation marks omitted). Standing requires a plaintiff to establish three

7  elements: (1) "the plaintiff must have suffered an 'injury in fact'" that is "concrete

8  and particularized" and "actual or imminent"; (2) "there must be a causal connection

9  between the injury and the conduct complied of"; and (3) "it must be 'likely,' as

10  opposed to merely 'speculative,' that the injury will be 'redressed by a favorable

11  decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, the

12  alleged injury Karter suffered is not fairly traceable to Epiq Systems. *Id.*

13       When, as here, a defendant makes a "factual" attack on jurisdiction, the court

14  should consider "evidence outside of the pleadings." *Leite v. Crane Co.*, 749 F.3d

15  1117, 1121 (9th Cir. 2014). For factual challenges, "the plaintiff must support her

16  jurisdictional allegations with 'competent proof,' under the same evidentiary

17  standard that governs in the summary judgment context." *Id.* (quoting *Hertz Corp. v.

18  Friend*, 559 U.S. 77, 96–97 (2010)). The plaintiff "bears the burden of proving by a

19  preponderance of the evidence that each of the requirements for subject-matter

20  jurisdiction has been met." *Id.*

21       The factual record here demonstrates that Karter did not suffer any injury

22  fairly traceable to Epiq Systems. As explained in the declaration of Michael

23  O'Connor, if Karter provided his data as a member of a class to any Epiq company,

24  it would have been Epiq Class Action. Epiq Systems does not administer class

25  action settlements, and the two entities have separate employees, management,

26  corporate structures, addresses, and registered agents. O'Connor Decl. ¶¶ 9–12. Epiq

27

28

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1    Class Action has its own databases, uses its own proprietary software and

2    applications, and maintains its own separate books. *See id.* ¶¶ 13–14; *cf. Harris*

3    *Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir.

4    2003) (respecting corporate separateness even though parent and subsidiary shared

5    officers and directors, co-employed staff, and shared physical office space).

6          Because standing requires a plaintiff to show injury that is not "the result of

7    the independent action of some third party not before the court," *Mendia v. Garcia*,

8    768 F.3d 1009, 1012 (9th Cir. 2014), courts routinely turn to Article III standing

9    when "ruling that the plaintiff has pursued the claim against the wrong defendant."

10   Charles Alan Wright & Arthur R. Miller; 13A *Federal Practice & Procedure*

11   § 3531 (3d ed.) (collecting cases).

12         In *Cattie v. Wal-Mart Stores, Inc.*, for example, the plaintiff initially brought

13   false advertising claims against Wal-Mart Stores, Inc. ("Wal-Mart Stores"), before

14   amending the complaint to include both Wal-Mart Stores and its subsidiary,

15   Walmart.com USA, LLC ("Walmart.com USA"). 504 F. Supp. 2d 939, 944 (S.D.

16   Cal. 2007). Because Walmart.com USA was the entity that had marketed the

17   challenged product to plaintiff, Wal-Mart Stores—the parent company—moved to

18   dismiss for lack of standing under Rule 12(b)(1). *Id.* The Court granted Wal-Mart

19   Stores' motion to dismiss because the allegations in the amended complaint—and

20   the allegations plaintiff asserted could be added after jurisdictional discovery—were

21   insufficient to show that Wal-Mart Stores was involved in the alleged wrongdoing

22   by its subsidiary or directed the type of activity about which the plaintiff

23   complained. *Id.* at 946. For that reason, the plaintiff failed to show that her injury

24   was fairly traceable to the actions of Wal-Mart Stores. *Id.*

25         The same result should follow here. Like the plaintiff in *Cattie*, Karter has

26   brought suit against an uninvolved parent company, Epiq Systems, rather than the

27

28
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

appropriate subsidiary, Epiq Class Action. Karter concedes that he submitted a tax form containing his social security number to Epiq Class Action "in relation to a class action settlement which Epiq [Class Actions] administered and in which Karter was a class member." (Compl. ¶ 20.) Therefore, as the Complaint makes clear, Karter's dispute lies (if at all) with Epiq Class Action.

### B.    The Court Lacks Personal Jurisdiction Over Epiq Systems

Karter's same error leaves the court without personal jurisdiction over Epiq Systems. Because Karter cannot demonstrate any California activity by Epiq Systems connected to his alleged injuries, the court does not have specific personal jurisdiction. Nor does the Court have general jurisdiction: notwithstanding the bare allegations in the Complaint, Epiq Systems—incorporated in Missouri and with its principal place of business in New York—is not "at home" in California.

Personal jurisdiction may be general (all-purpose) or specific (case-linked). *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). It is a defendant-specific inquiry, *see Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980), that focuses on the contacts the defendant has with the forum, *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014); *Walden v. Fiore*, 134 S. Ct. 1115, 1121–22 (2014).

Whatever grounds a plaintiff asserts as the basis for jurisdiction, when a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Although "uncontroverted allegations in the complaint must be taken as true," a "plaintiff cannot simply rest on the bare allegations of its complaint." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (internal quotation marks omitted). For that reason, courts "may consider evidence presented in affidavits and declarations in determining personal

jurisdiction." *Schwartz E Liquid*, 2019 WL 4459324, at *2 (citing *Unocal Corp.*, 248 F.3d at 922).

### 1.   There Is No Specific Jurisdiction Over Epiq Systems

To establish specific jurisdiction, a defendant's "suit-related conduct must create a substantial connection with the forum State" that "must arise out of contacts that the '*defendant himself*' creates with the forum State," and cannot be based on "contacts he makes by interacting with other persons affiliated with the State." *Walden*, 134 S. Ct. at 1121–23. In analyzing a defendant's contacts with the forum state, courts may look only at the "very activity" out of which the "cause of action arises." *Keeton*, 465 U.S. at 780.

Karter flunks that test here. As explained above, Karter's claim lies with Epiq Class Action, not Epiq Systems. Karter did not provide any personal information to Epiq Systems, and therefore his claim does not "arise out of" Epiq Systems' forum-related activities. As a result, the Court lacks specific jurisdiction over Epiq Systems. *E.g.*, *Wild v. Preventive Pest Control, LLC*, No. 19-cv-01420-CJC(SKX), 2019 WL 2871155, at *3 (C.D. Cal. May 29, 2019) (Carney, J.) (no personal jurisdiction when "Defendant's owner has submitted a sworn affidavit that a different entity" operated and controlled the at-issue website).

### 2.   There Is No General Jurisdiction Over Epiq Systems

The Complaint also does not establish a basis for exercising general personal jurisdiction over Epiq Systems. A court may assert general jurisdiction over companies "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). The paradigmatic bases for general jurisdiction of a corporation are its place of incorporation and principal place of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

business. *Daimler*, 571 U.S. at 137. "The standard for general jurisdiction is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Mavrix*, 647 F.3d at 1224 (internal quotation marks omitted).

Epiq Systems is a Missouri corporation with its principal place of business in New York. Its home office is in New York, not California. O'Connor Decl. ¶ 7. The Complaint's entire jurisdictional allegations reads: "Epiq routinely transacts business in Orange County and through the State of California." (Compl. ¶ 15.) That bare allegation is insufficient to render Epiq Systems "at home" in California, and nothing else in Karter's allegations support general jurisdiction over Epiq Systems.

### C.     By Suing The Wrong Entity, Karter Fails To State A Cognizable Claim Against Epiq Systems

In addition, some courts in this Circuit have dismissed claims naming the wrong defendant under Rule 12(b)(6) or under a summary judgment standard. *See, e.g.*, *Oland v. Forever Living Prods. Int'l, Inc.*, No. CV 09-8039-PHX-MHM, 2009 WL 5128658, at *3 (D. Ariz. Dec. 17, 2009) (converting Rule 12(b)(6) motion making wrong entity argument into a motion for summary judgment and granting summary judgment in favor of defendant); *see also Equal Employment Opportunity Comm'n v. AutoNation USA Corp.*, No. CV 05-1575-PHX-ROS, 2007 WL 9724419, at *2 n.1 (D. Ariz. May 3, 2007) (explaining that the court would have granted a Rule 12(b)(6) motion arguing defendant was not the proper party). Either way, because Karter indisputably sued the wrong entity, his Complaint against Epiq Systems must be dismissed.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

## II.  The Complaint Fails To State A Claim For Relief

Dismissal pursuant to Rule 12(b)(6) "is appropriate if the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face." *Ebner v. Fresh, Inc.*, 838 F. 3d 958, 962–63 (9th Cir. 2016). "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (internal quotation marks omitted). And whatever the facts alleged, dismissal is warranted when the plaintiff fails to articulate a viable theory of recovery. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).

The CCPA confers a narrow private right of action when a "*business's* violation of the duty to implement and maintain reasonable security procedure and practices" results in "unauthorized access and exfiltration, theft, or disclosure" of a California resident's "nonencrypted and nonredacted personal information." Cal. Civ. Code. § 1798.150(a)(1) (emphasis added). Karter does not and cannot allege that either Epiq Systems or Epiq Class Action is a covered business under the CCPA. Both entities are at most "service providers" under the CCPA, and there is no private right of action against service providers. If that were not enough, Karter's allegations concerning the remaining elements of a claim under the CCPA are also too conclusory to support a plausible claim.

### A.  The CCPA Does Not Apply to Epiq Systems

As relevant here, the CCPA defines a "business" as a for-profit entity that "collects consumers' personal information or on the behalf of which that information is collected and that alone, or jointly with others, *determines the purposes and means* of the processing of consumers' personal information." Cal. Civ. Code § 1798.140(c)(1) (emphasis added). The CCPA separately defines a "service provider" as an entity that "processes information *on behalf of* a business

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

and" is a company "to which the business discloses a consumer's personal information for a business purpose pursuant to a written contract." Cal. Civ. Code. § 1798.140(v) (emphasis added).

Karter nowhere alleges that the named defendant, Epiq Systems, is a covered "business" as defined by California Civil Code § 1798.140(c). Nor does he allege *any* facts that might support that conclusion. The Complaint simply states that Karter provided his name and social security number "to Epiq." (Compl. ¶ 20.) He does not allege or even suggest that Epiq Systems—rather than its clients, the law firms and companies that hire it to provide legal services to them—"determines the purpose and means" of processing the information of any putative class members or other California individuals whose data is in Epiq Systems' possession. This pleading failure alone warrants dismissal. *See, e.g.*, *Kirsch v. Lei Floor and Window Coverings, Inc.*, No. CV 16-00284 ACK-RLP, 2017 WL 82468, at *4 (D. Haw. Jan. 9, 2017) (collecting cases dismissing complaints where the plaintiff failed to allege the defendant was covered by the applicable statute); *Levy v. Cont'l Airlines, Inc.*, No. 07-1266, 2007 U.S. Dist. LEXIS 73027, at *24–25 (E.D. Pa. Oct. 1, 2007) (dismissing claim against airline operator, because the relevant statute applied only to airline manufacturers and designers).[14]

This is more than a mere pleading defect, however. Karter's CCPA claim is

---

[14] *See also, e.g.*, *Gaube v. Day Kimball Hosp.*, No. 3:13-CV-01845 VAB, 2015 WL 1347000, at *9 (D. Conn. Mar. 24, 2015) (finding plaintiff failed to state a claim under the ADA where complaint did "not allege[] that either defendant employed fifteen or more employees at any time"); *Coder v. Medicus Labs., LLC*, No. 4:14-CV-7, 2014 WL 2984052, at *2 (E.D. Tex. July 2, 2014) (same); *Mohan v. La Rue Distrib.'s Inc.*, No. 06-CV-621 FB RLM, 2007 WL 3232225, at *1 (E.D.N.Y. Oct. 31, 2007) (ruling that the complaint failed to state a claim "because it [did] not allege[] that defendant [was] a 'covered entity' under the ADA").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

fundamentally flawed because Epiq Systems is at most a "service provider" under the CCPA and not a "business." In fact, Karter's Complaint explicitly concedes that Epiq Systems processes information on behalf of other businesses. Specifically, the Complaint alleges that Epiq Systems is "a worldwide *provider of legal services*, serving law firms, corporations, financial institutions and government agencies." (Compl. ¶ 1 (emphasis added).)[15] To the extent Epiq Systems or any of its subsidiaries receive and process consumer information, that is done on behalf of their clients—"helping them streamline the administration of business operations, class action and mass tort, court reporting, eDiscovery, regulatory, compliance, restructuring, and bankruptcy matters." (*Id.*)

For that reason, Epiq Systems is not the company "on whose behalf" consumer data is processed, but rather it is a company that "processes information *on behalf of*" its clients and "to which [its clients] disclose[] a consumer's personal information for a business purpose pursuant to a written contract." Cal. Civ. Code. § 1798.140(v).

The CCPA creates a private right of action against businesses, not service providers. *Id.* § 1798.150(a)(1).[16] Karter therefore has no cognizable claim against Epiq Systems. *See Henderson v. Borough of Baldwin*, No. 15-1011, 2016 WL 5106945, at *6 (W.D. Pa. Sept. 20, 2016) (plaintiff failed to state a cognizable HIPAA claim because he could not allege that defendant employer was a covered entity under the statute); *Beaird v. Gonzales*, 495 F. Supp. 2d 81, 83 n.2 (D.D.C.

---

[15] Quoting Epiq Systems, *About Epiq*, https://www.epiqglobal.com/en-us/about/overview (last visited Sept. 4, 2020).

[16] Only the California Attorney General is authorized to bring civil legal claims under the CCPA against service providers. Cal. Civ. Code. § 1798.155(b).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

2007) ("Plaintiffs fail to state a claim under the ADA because it does not apply to the federal government").

## B.    Karter Does Not Plausibly Plead A Violation Of The CCPA

The Complaint's allegations with respect to the remaining elements of a claim under the CCPA are inadequate to state a plausible claim for relief. Karter offers no factual support whatsoever for his conclusory allegation that his personal information was exfiltrated during the ransomware attack or that his information was nonencrypted and nonredacted—both required for a claim under the CCPA.

Karter alleges that as a result of the ransomware attack Epiq Systems and its subsidiaries suffered, his personal information was "exfiltrated" (Compl. ¶ 5), "stolen" (*id.* ¶ 6), subject to "exfiltration" (*id.* ¶ 17), "subject to an unauthorized access and exfiltration, theft, or disclosure" (*id.* ¶ 21), "exfiltrated and subject to unauthorized disclosure" (*id.* ¶ 35), and that his "information is now in the hands of hackers" (*id.* ¶ 23). Despite his repeated incantation of the specter of stolen data, Karter pleads no facts to support this conclusory allegation. The allegation is also contradicted by Epiq Systems' public statements that it had "found no evidence that any client data was accessed, misused, or exfiltrated" as a result of the ransomware attack.[17] In the end, Karter's allegations are nothing more than "a shot in the dark," *Helstern v. City of San Diego*, No. 13-CV-0321-LAB (RBB), 2013 U.S. Dist. LEXIS 97707, at *15 (S.D. Cal. July 10, 2013), that he hopes to use to "unlock the doors of discovery," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). That is not enough to overcome a motion to dismiss.

---

[17] https://www.epiqglobal.com/en-us/about/news/corporate/client-systems-restored (last accessed September 4, 2020). To the extent Karter's personal information was on Epiq Class Action's systems and was affected by the ransomware attack, it would already have been encrypted by the company, so the ransomware would only have added a second level of encryption to those files on Epiq Class Action's systems.

Even in the context of data breaches, where there is no dispute that data was stolen during the attack—unlike ransomware attacks of the kind Epiq Systems and its subsidiaries experienced, which do not typically involve data exfiltration—courts have held that conclusory allegations of data theft cannot survive a motion to dismiss. In *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 880 (N.D. Ill. 2014), for example, the plaintiff alleged that her personal information was "stolen and compromised" as a result of the defendant's data breach, but the court found that to be "a conclusion in need of factual support." *Id.* Like Karter's Complaint here, the plaintiff's complaint in *Strautins* "rest[ed] entirely on the assumption that her PII was disclosed because (1) the [defendant] was cyber-attacked and (2) because she filed tax returns in South Carolina" and her data was therefore in the database that was attacked. *Id.* The court held that "the fact that hackers gained some access to a . . . database does not necessarily mean, or even plausibly suggest, that they obtained access to all of the data in [defendant's] possession, and the complaint provides no basis to infer that the hacker (or hackers) obtained [plaintiff's] data." *Id.*; *see also Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.*, No. 2:19-CV-798-RAH-SMD, 2020 WL 4016246, at *6–7 (M.D. Ala. July 16, 2020) (holding that "the fact that the Breach occurred cannot in and of itself be enough, in the absence of any imminent or likely misuse of protected data, to provide Plaintiffs with standing to sue," particularly where "Plaintiffs fail to allege that they or members of the putative class have suffered actual identity theft. Instead, their pleading speaks of possibilities and traffics in maybes.").

If the conclusory allegations of exfiltration in *Strautins* were insufficient to state a plausible claim for relief, then Karter's conclusory allegations that his personal information was exfiltrated or stolen here, arising from a ransomware attack and not a data breach, are doubly insufficient.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Karter makes similar repeated and unsupported allegations that his personal information was "nonencrypted and nonredacted." (Compl. ¶¶ 6, 17, 35.) This allegation simply recites one element of the claim as if it were a factual allegation. *See, e.g.*, *Duran v. Maxim Healthcare Servs. Inc.*, No. CV 17-01072-AB (EX), 2018 WL 5915644, at *4 (C.D. Cal. Mar. 9, 2018) (dismissing FLSA claims because "Plaintiffs' allegations parrot[ed] the statutory language and d[id] not provide specific facts to support" the claims); *Blash v. Wells Fargo Bank*, No. SACV14-02069CJC (RNBx) (Carney, J.), 2015 WL 12791376, at *5 (C.D. Cal. Feb. 26, 2015) (dismissing California Consumer Reporting Agency Act claim because it relied entirely on "threadbare recitals" of the statutory language); *Babadjanian v. Deutsche Bank Nat'l. Trust Co.*, No. CV 10-02580 MMM (RZx), 2011 U.S. Dist. LEXIS 165392, at *36 (C.D. Cal. Mar. 29, 2011) ("This conclusory allegation, which essentially recites the elements of a [statutory] claim, is insufficient to satisfy Rule 8."). As with Karter's allegation that his personal information was exfiltrated, the allegation that his information was not encrypted or redacted is "a shot in the dark" that is inadequate to plead a CCPA violation. *Iqbal*, 556 U.S. at 678–79); *Helstern*, 2013 U.S. Dist. LEXIS 97707, at *14–15.

These conclusory allegations, unsupported by fact, do not adequately plead a violation of the CCPA because they "simply don't raise the right to relief [above] the speculative level." *Helstern*, 2013 U.S. Dist. LEXIS 97707, at *14–15 ("the Court will not 'unlock the doors of discovery for a plaintiff armed with nothing more than conclusions'" (quoting *Iqbal*, 556 U.S. at 678–79)).

## C.  Amendment To Name Epiq Class Action Would Be Futile

Even if Karter were to seek leave to amend his complaint to name Epiq Class Action as a defendant, amendment would be futile because Epiq Class Action is not a covered "business" under the CCPA, for the same reasons that Epiq Systems is not

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1  a covered "business." Amendment would also be futile because Karter failed to

2  provide the requisite pre-suit notice to Epiq Class Action. Cal. Civ. Code

3  § 1798.150(b).

4       Karter alleges that he submitted a tax form containing his social security

5  number "to Epiq"—in fact, to Epiq Class Action—"in relation to a class action

6  settlement which Epiq [Class Actions] administered and in which Karter was a class

7  member." (Compl. ¶ 20.) For every class action settlement that it administers, Epiq

8  Class Action is hired by a law firm or the class action defendant. The Epiq Systems

9  website quoted in the Complaint states that Epiq Class Action is engaged by clients

10  to "administ[er] . . . class action and mass tort matters." Epiq Class Action & Mass

11  Tort, https://www.epiqglobal.com/epiq/media/resourcefiles/ eca-brochure.pdf (last

12  visited Sept. 4, 2020). On behalf of its clients, Epiq Class Action "handle[s] large

13  volumes of data securely with our advanced data import and processing engine." *Id.*

14       If any party to the class action settlement administration process is a

15  "business" under the CCPA, it is the client that hires Epiq Class Action. It is the

16  clients that decide which personal information to collect and how, not Epiq Class

17  Action. And it is the clients that determine the purpose for collecting that

18  information, not Epiq Class Action. Epiq Class Action, on the other hand, only

19  receives and "processes information *on behalf of*" its clients—invariably "for a

20  business purpose" (to satisfy its clients' obligations to administer the class action

21  settlements) and always "pursuant to a written contract." Cal. Civ. Code.

22  § 1798.140(v).

23       In addition, to pursue statutory damages under the CCPA, a would-be plaintiff

24  must first provide the alleged violator written notice that the data security provision

25  of the CCPA has been violated. Cal. Civ. Code § 1798.150(b). The business then

26  has 30 days to "cure" the alleged violation and provide the plaintiff with "an express

27

28                          24

written statement that the violations have been cured and that no further violations shall occur." *Id.* Only if the business does not cure the alleged violation and provide the required written statement may the would-be plaintiff seek statutory damages. *Id.* Karter alleges that he provided Epiq Systems with notice of alleged CCPA violations (Compl. ¶ 36), but does not allege that he provided Epiq Class Action with the statutorily required pre-suit notice and opportunity to cure. *See, e.g.*, *Covington v. Jefferson Cty.*, 358 F.3d 626, 636 (9th Cir. 2004) (concluding that "[a]bsent compliance with a required notice provision," the court lacked subject matter jurisdiction to hear plaintiff's Resource Conservation and Recovery Act claims); *McCrary v. Gutierrez*, 528 F. Supp. 2d 995, 998 (N.D. Cal. 2007) (failure to satisfy notice requirement in the Endangered Species Act prevented the court from asserting subject matter jurisdiction over plaintiff's claim).

Any proposed amendment to the Complaint would be futile both because Epiq Class Action is a service provider and private actions against service providers are not cognizable under the CCPA, and because Karter failed to satisfy the pre-suit notice requirements under the CCPA as to Epiq Class Action. *See Perez v. Mortg. Elec. Registration Sys., Inc.*, 959 F.3d 334, 341 (9th Cir. 2020) (district court did not abuse discretion in denying leave to amend complaint where proposed amendments would not have changed the determination that the action was filed preemptively). Accordingly, Karter can allege "no set of facts . . . that would constitute a valid and sufficient claim." *Mo. ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (internal quotation marks omitted).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint against Epiq Systems in its entirety with prejudice.

25

Dated:  September 4, 2020          MITCHELL SILBERBERG & KNUPP LLP

                                  */s/ Jean Pierre Nogues*
                                       Jean Pierre Nogues

                                  2049 Century Park East, 18th Floor
                                  Los Angeles, CA 90067
                                  Telephone:   (310) 312-3152
                                  Facsimile:    (310) 312-3100
                                  MICHAEL F. BUCHANAN (*Pro Hac Vice*)
                                       mfbuchanan@pbwt.com
                                  PETER A. NELSON (*Pro Hac Vice*)
                                       pnelson@pbwt.com
                                  KADE N. OLSEN (*Pro Hac Vice*)
                                       kolsen@pbwt.com
                                  JEFFREY C. SKINNER (*Pro Hac Vice*)
                                       jskinner@pbwt.com
                                  CHRISTOPHER WILDS (*Pro Hac Vice*)
                                       cwilds@pbwt.com
                                  PATTERSON BELKNAP WEBB & TYLER LLP
                                  1133 Avenue of the Americas
                                  New York, New York 10036
                                  Telephone:   (212) 336-2350
                                  Facsimile:    (212) 336-2222

                                  *Attorneys for Defendant Epiq Systems, Inc.*

26