Aaron D. Aftergood (239853)
    aaron@aftergoodesq.com
**THE AFTERGOOD LAW FIRM**
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

Steven L. Woodrow*
    swoodrow@woodrowpeluso.com
Patrick H. Peluso*
    ppeluso@woodrowpeluso.com
**WOODROW & PELUSO, LLC**
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Attorneys for Plaintiff* BENJAMIN KARTER
and the Class

*Pro hac vice

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN KARTER, individually and on behalf of all others similarly situated, | Case No: 8:20-cv-01385-CJC-KES |
| *Plaintiff*, | **PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| EPIQ SYSTEMS, INC., a Missouri corporation, and EPIQ CLASS ACTION & CLAIMS SOLUTIONS, INC., a Rhode Island corporation, | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

1

# CLASS ACTION COMPLAINT

Plaintiffs Benjamin Karter ("Plaintiff" or "Karter") brings this Class Action Complaint ("Complaint") against Defendants Epiq Systems, Inc. ("Epiq Systems") and Epiq Class Action & Claims Solutions, Inc. ("Epiq Class Action") (collectively "Defendants" or "Epiq") on behalf of himself and all others similarly situated. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Defendant Epiq Systems describes itself as "a worldwide provider of legal services, serving law firms, corporations, financial institutions and government agencies—helping them streamline the administration of business operations, class action and mass tort, court reporting, eDiscovery, regulatory, compliance, restructuring, and bankruptcy matters."[1]

2. Defendant Epiq Class Action is a wholly-owned subsidiary of Epiq Systems that "administers class action and mass tort settlements and judgments for litigants and courts alike." (Dkt. 35-1 at 4.) According to Epiq, its class action subsidiary performs functions including providing notice to class members, receiving and processing opt-outs, and managing claims databases. (*Id.*)

3. According to a March 2, 2020 article on www.techcrunch.com ("TechCrunch"), Epiq confirmed on February 29, 2020 that it was hit by a ransomware attack.[2]

4. According to the same March 2, 2020 TechCrunch report, the ransomware attack was extensive:

---

[1] https://www.epiqglobal.com/en-us/about/overview

[2] https://techcrunch.com/2020/03/02/epiq-global-ransomware/

2

> A source with knowledge of the incident but who was not authorized to speak to the media said the ransomware hit the organization's entire fleet of computers across its 80 global offices. According to an internal communication sent to staff that was obtained by TechCrunch, the law services company said staff should "not go" to their local offices without managerial approval. Staff in offices were advised to avoid connecting any device to the network. The communication also said that staff should "turn off the Wi-Fi on your laptop before entering the parking lot of the building" in an effort to prevent the spread of the ransomware.
>
> Many of the computers were running old versions of Windows, the source said. "Nothing is up to date," the source said.
>
> The source came forward because, in their words, "we were told not to tell clients anything until we are back in."

5. On information and belief, Epiq was actually infected by two different types of malware and ransomware. First, "Trickbot" malware, and more recently "Ryuk" ransomware.

6. On information and belief, this malware and ransomware exfiltrated sensitive data on Epiq's network(s) and the data is now in the hands of the perpetrators.

7. On information and belief, the information stolen from Epiq's network(s) included nonencrypted and nonredacted personal information, as defined in Cal. Civ. Code § 1798.81.5(A)(1)(d), for Plaintiff Karter and the members of the alleged Class.

8. As a result of this data breach, Plaintiff Karter and the members of the alleged Class face a lifetime risk of identity theft.

9. This personal information was stolen due to Epiq's negligent and careless acts and omissions and the failure to protect consumers' data.

10. Epiq has failed to satisfy its duty under the California Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq*. to implement reasonable security

procedures and practices appropriate to the nature of the personal information in its possession.

11. As the TechCrunch article states "[m]any of the computers were running old versions of Windows, the source said. 'Nothing is up to date'". If Epiq had reasonable security procedures in place, such as quality filtering on email gateways and quality network protection, this incident would not have occurred. Epiq has failed to satisfy its duty and has violated the CCPA in the process.

12. On behalf of himself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendants under the CCPA.

13. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative fact. This action is based on the same legal theory, namely liability under the CCPA. This action seeks relief expressly authorized by the CCPA: (i) injunctive relief enjoining Defendants from continuing to violate the CCPA; (ii) an award of statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per Class member for each violation of the CCPA; and any other relief the Court deems proper as a result of Defendants' CCPA violations.

## PARTIES

14. Plaintiff Benjamin Karter is a natural person and citizen of the state of California. He resides in Irvine, California.

15. Defendant Epiq Systems is a Missouri corporation with its corporate headquarters located at 777 Third Avenue, 12th Floor, New York, New York 10017.

16. Defendant Epiq Class Action is a Rhode Island corporation with its corporate headquarters located at 10300 Southwest Allen Blvd., Beaverton, Oregon 97005.

## JURISDICTION AND VENUE

17. The Court has general jurisdiction over this matter because Epiq routinely transacts business in Orange County and through the State of California. Epiq has repeated and sustained ties to this State.

18. Venue is proper pursuant to Code of Civil Procedure Section 395 and 395.5, Business & Professions Code Sections 17203 and 17204, and Civil Code Section 1780(c) because Defendants do business in Orange County and Plaintiff, whose information was compromised as a result of Defendants' failure to implement reasonable security procedures, resides in Orange County.

## FACTS RELATING TO ALL COUNTS

19. As stated above, Epiq's network(s) were infected with both "Trickbot" and "Ryuk" malware in early 2020, which resulted in the exfiltration of nonredacted and nonencrypted personal information of consumers with personal information Epiq's network, including Plaintiff.

20. Under the CCPA:

> Any consumer whose nonencrypted and nonredacted personal information as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5, or whose email address in combination with a password or security question and answer that would permit access to the account, is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of a business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for any of the following:
>
> (A) To recover damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident or actual damages, whichever is greater.
>
> (B) Injunctive or declaratory relief.
>
> (C) Any other relief the court deems proper.

CAL. CIV. CODE § 1798.150.

21. The statute defines a "business" as a for-profit corporation or other legal entity that "collects consumers' personal information . . . and that alone, or jointly with others, determines the purposes and means of processing of consumers' personal information" and does business in California. *Id.* § 1798.150. The statute further requires that the business meet one of three threshold requirements: (1) annual gross revenues of more than $25,000,000; (2) annual aggregate purchase, receipt, sale, or sharing of personal information of 50,000 or more consumers, households, or devices; (3) 50 percent or more of annual revenues derived from selling consumers' personal information. *Id.* § 1798.140(c)(1)(A)–(C).

22. The CCPA further defines "processing" as "any operation or set of operations that are performed on personal data or on sets of personal data, whether or not by automated means." *Id.* § 1798.140(q).

23. Defendants are for-profit corporations that do business in California. They collect consumers' personal information pursuant to contractual agreements with their clients, including for the purposes of class action administration. While the purpose of Epiq's data collection may be subject to contract, Defendants themselves determine the purposes and means of *processing* the data they collect. Epiq and its subsidiaries are sophisticated data processing entities with proprietary software that, on information and belief, performs processing functions that are not determined by Epiq's clients.

24. In turn, the type of information contained in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5 (and thus the subject of this law), includes:

> (A) An individual's first name or first initial and the individual's last name in combination with any one or more of the following data

elements, when either the name or the data elements are not encrypted or redacted:
(i) Social security number.
(ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual.
(iii) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account.
(iv) Medical information.
(v) Health insurance information.
(vi) Unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual. Unique biometric data does not include a physical or digital photograph, unless used or stored for facial recognition purposes.
(3) "Health insurance information" means an individual's insurance policy number or subscriber identification number, any unique identifier used by a health insurer to identify the individual, or any information in an individual's application and claims history, including any appeals records.
(4) "Personal information" does not include publicly available information that is lawfully made available to the general public from federal, state, or local government records.

25. On information and belief, Plaintiff Karter's social security number was on Epiq's network at the time of the breach(es) at issue as the result of Karter submitting a tax form containing Karter's social security number to Epiq in relation to a class action settlement which Epiq administered and in which Karter was a class member.

26. On information and belief, Karter's social security number was subject to an unauthorized access and exfiltration, theft, or disclosure as a result of Epiq's violation of its duty to implement and maintain reasonable security procedures and practices.

7

27. Far from having reasonable security procedures and practices, Epiq was apparently using outdated versions of Windows and did not utilize up-to-date security procedures, strategies, and software to prevent an attack such as the one that occurred.

28. As a result of Epiq's failure to protect Plaintiff and the Class's personal identifying information is now in the hands of hackers.

## CLASS ALLEGATIONS

29. **Class Definitions:** Plaintiff brings this class action on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All persons residing in California whose nonredacted and nonencrypted personal information was compromised in the data breach(es) affecting Epiq's network(s) in 2020.

Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parent have a controlling interest, and those entities' current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

30. **Numerosity:** The exact number of Class members is unknown to Plaintiff at this time, but it is clear that joinder of each individual member is impracticable. Defendants possess personal information for thousands of consumers.

31. **Commonality:** Common questions of law and fact exist as to all members of the Class for which this proceeding will provide common answers in a single stroke, including:

a. Whether Epiq implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiff's and the Class members' personal information;

b. Whether Epiq knew or should have known that it had failed to implement and maintain reasonable security procedures and practices to keep Plaintiff's and Class members' personal information secure and prevent loss, exfiltration, or misuse of that information;

c. Whether Epiq adequately addressed and fixed the vulnerabilities which permitted the data breach(es) to occur; and

d. Whether Plaintiff and the Class members are entitled to relief and the nature of such relief.

32. **Typicality:** As a result of Defendants' uniform disclosures and conduct, Plaintiff and the Class members suffered the same injury and similar damages. Thus, Plaintiff's claims are typical of the claims of the other Class members.

33. **Adequate Representation:** Plaintiff is a member of the Class and both he and his counsel will fairly and adequately represent and protect the interests of the Class, as neither has interests adverse to those of the Class members and Defendants have no defenses unique to Plaintiff. In addition, Plaintiff has retained counsel competent and experienced in complex litigation and class actions, including class actions focused on privacy laws. They have the ability to prosecute the case and the financial resources to do so.

34. **Injunctive and Declaratory Relief:** In using uniform (inadequate) security procedures, Epiq has acted or refused to act on grounds generally applicable to the Class a whole so as to render injunctive and declaratory relief appropriate. Stated differently, Defendants' uniform conduct requires the Court's imposition of

9

uniform relief to ensure compatible standards of conduct toward the Class members, thus making final injunctive and/or declaratory relief appropriate with respect to the Class as a whole. Further, because Defendants' uniform practices result in similar, if not identical, injuries for all Class members, Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class, not on facts or law applicable only to Plaintiffs.

35. **Predominance:** The common questions of law and fact set forth above go to the very heart of the controversy and predominate over any supposed individualized questions. Irrespective of any given Class member's situation, the answer to whether Defendants' security procedures complied with its duties under the CCPA is the same for each class member and will be proven using common evidence.

36. **Superiority and Manageability**: A class action is superior to all other methods of adjudicating the controversy. Joinder of all claims is impractical, and the damages suffered by/available to the individual Class members will likely be small relative to the cost associated with prosecuting an action. Thus, the expense of litigating an individual action will likely prohibit the Class members from obtaining effective relief for Defendants' misconduct. In addition, there are numerous common factual and legal questions that could result in inconsistent verdicts should there be several successive and differing trials. In contrast, a class action will present far fewer management difficulties, as it will increase efficiency and decrease expense. Further, class-wide adjudication will also ensure a uniform decision for the Class members.

37. Plaintiff reserves the right to revise the definition of the Class as necessary based upon information learned in discovery.

# FIRST CAUSE OF ACTION
**Violations of the California Consumer Privacy Act**
Cal. Civ. Code § 1798.100, et seq.
(On behalf of Plaintiffs and the Class)

38. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

39. The CCPA went into effect on January 1, 2020. This privacy law was enacted to protect consumers' personal information.

40. Defendants are "businesses" as that term is defined in the CCPA, and they are therefore subject to liability under the statute.

41. Defendants violated CCPA Section 1798.150(a) by violating its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information in its possession for both Plaintiff and Class members.

42. As a result of Defendants' violation of its duty, Plaintiff's and Class members' nonencrypted and nonredacted personal information was exfiltrated and subject to unauthorized disclosure.

43. In accordance with Civil Code Section 1798.150(b), Plaintiff sent to Defendant, via email and overnight United Parcel Service, notice of these CCPA violations and a demand for relief.

44. On behalf of Class members, Plaintiff seeks injunctive relief in the form of an order enjoining Defendants from continuing to fail to implement reasonable procedures to protect Plaintiff's and the Class's personal information.

45. Plaintiff also seeks statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident, attorneys' fees and costs, and any other relief the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Karter, on behalf of himself and the Class, respectfully requests that this Court issue an order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as class representative and appointing his counsel as class counsel;

B. Declaring that Defendants' actions, as set out above, constitute violations of California law;

C. Awarding damages, including punitive damages where applicable, to Plaintiff and the Class in amounts to be determined at trial, to be paid into a common fund for the benefit of the Class;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

G. Providing such other injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

H. Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all claims so triable.

|   |   |
|---|---|
|   | Respectfully submitted, |
| Dated: March 10, 2021 | **BENJAMIN KARTER**, individually and on behalf of all others similarly situated, |
|   | By: /s/ Patrick H. Peluso |
|   | One of Plaintiff's Attorneys |

THE AFTERGOOD LAW FIRM
Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Attorneys for Plaintiffs*

\**Pro hac vice* application to be filed