JEAN PIERRE NOGUES (SBN 84445)
jpn@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067
Telephone:   (310) 312-3152
Facsimile:    (310) 312-3100

MICHAEL F. BUCHANAN (*Pro Hac Vice*)
mfbuchanan@pbwt.com
PETER A. NELSON (*Pro Hac Vice*)
pnelson@pbwt.com
JEFFREY C. SKINNER (*Pro Hac Vice*)
jskinner@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 336-2350
Facsimile:    (212) 336-2222

*Counsel for Defendants Epiq Systems, Inc. and Epiq Class
Action & Claims Solutions, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN KARTER, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>      v.<br><br>EPIQ SYSTEMS, INC., a Missouri corporation, and EPIQ CLASS ACTION & CLAIMS SOLUTIONS, INC., a Rhode Island corporation,<br><br>        Defendants. | CASE NO. 8:20-cv-01385-CJC-KES<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Date:    April 19, 2021<br>Time:    1:30pm<br>Place:   Courtroom 9B<br>Judge:   Honorable Cormac J. Carney<br>Date Action Filed:   July 29, 2020 |

1

## **<u>TABLE OF CONTENTS</u>**

2   TABLE OF AUTHORITIES .......................................................................................... ii

3   PRELIMINARY STATEMENT ................................................................................. 1

4   STATEMENT OF RELEVANT FACTS .................................................................... 3

5        A.    Epiq Systems and Epiq Class Action Suffer A Ransomware

6              Attack ................................................................................................... 3

7        B.    The California Consumer Privacy Act ................................................ 5

8        C.    The Amended Complaint .................................................................... 7

9   ARGUMENT ............................................................................................................. 9

10       I.    The CCPA Does Not Permit a Private Right of Action Against

11            Epiq Systems or Epiq Class Action ..................................................... 9

12       II.    Karter Does Not Plausibly Allege A Violation Of The CCPA .......... 13

13  CONCLUSION ......................................................................................................... 17

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>

2

3

4 <u>**Cases**</u>                                                                                                <u>**Page(s)**</u>

5 *Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................3, 11, 14, 16, 17

6 *Atkinson v. Minted, Inc.*,

7     No. 3:20-cv-03869 (N.D. Cal. June 11, 2020) ....................................................15

8 *Babadjanian v. Deutsche Bank Nat'l. Trust Co.*,
    No. CV 10-02580 MMM (RZx),

9     2011 U.S. Dist. LEXIS 165392 (C.D. Cal. Mar. 29, 2011) ...............................16

10 *Bates v. Green Farms Condo. Ass'n*,
    958 F.3d 470 (6th Cir. 2020) .............................................................................11

11 *Beaird v. Gonzales*,

12     495 F. Supp. 2d 81 (D.D.C. 2007)......................................................................10

13 *Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.*,
    No. 2:19-CV-798-RAH-SMD,

14     U.S. Dist. LEXIS 125394 (M.D. Ala. July 16, 2020) ...................................14, 15

15 *Blash v. Wells Fargo Bank*,
    No. SACV14-02069CJC (RNBx),

16     2015 WL 12791376 (C.D. Cal. Feb. 26, 2015)...........................................11, 16

17 *Cercas v. Ambry Genetics Corp.*,
    No. 8:20-cv-00791 (C.D. Cal. Apr. 23, 2020)....................................................15

18 *Conservation Force v. Salazar*,

19     646 F.3d 1240 (9th Cir. 2011) ..............................................................................9

20 *Duran v. Maxim Healthcare Servs. Inc.*,
    No. CV 17-01072-AB (EX),

21     U.S. Dist. LEXIS 225777 (C.D. Cal. Mar. 9, 2018) ....................................10, 11

22 *Ebner v. Fresh, Inc.*,
    838 F. 3d 958 (9th Cir. 2016) ................................................................................9

23 *Gardiner v. Walmart Inc.*,

24     No. 4:20-cv-04618-JSW (N.D. Cal. Mar. 5, 2021)............................................15

25 *Helstern v. City of San Diego*,
    No. 13-CV-0321-LAB (RBB),

26     2013 U.S. Dist. LEXIS 97707 (S.D. Cal. July 10, 2013)......................14, 16, 17

27

28

ii

*Henderson v. Borough of Baldwin*,
    No. 15-1011, U.S. Dist. LEXIS 127609 (W.D. Pa. Sept. 20, 2016) .................10

*Rahman v. Marriott Int'l*,
    No. 20-cv-00654 (C.D. Cal. Apr. 3, 2020).........................................................15

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871 (N.D. Ill. 2014).............................................................14, 15

*Worix v. MedAssets, Inc.*,
    869 F. Supp. 2d 893 (N.D. Ill. 2012).................................................................11


**<u>Statutes</u>**

California Consumer Privacy Act,
    Cal. Civ. Code § 1798.100 et seq. ..............................................................*passim*

11 Cal. Code Reg. 999.314(b) ................................................................................13


**<u>Other Authorities</u>**

Lauren Davis, *The Impact of the California Consumer Privacy*
    *Act on Financial Institutions Across the Nation*,
    24 N.C. Banking Inst. 499 (2020). .......................................................................6

Defendants Epiq Systems, Inc. ("Epiq Systems") and Epiq Class Action & Claims Solutions, Inc. ("Epiq Class Action") respectfully submit this memorandum of points and authorities in support of their motion to dismiss the Amended Complaint of Plaintiff Benjamin Karter ("Karter") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

In late February 2020, Epiq Systems and Epiq Class Action were the victims of a ransomware attack. Ransomware uses malicious software to encrypt files on a victim's computers or network and effectively lock the victim company out of its own data, in order to extort a ransom payment. The attack on Epiq Systems and Epiq Class Action severely disrupted their businesses by encrypting files across their networks. Both companies worked diligently to respond to the attack, regaining access to maliciously encrypted files, restoring their systems, and remediating the attack in a matter of weeks. Following the attack and a subsequent investigation, the Epiq Defendants publicly disclosed that although some files were encrypted by the ransomware attack and their businesses were disrupted, they found *no evidence* that any data belonging to their clients—personal or otherwise—was exfiltrated or stolen in connection with the ransomware attack.

Nevertheless, in an opportunistic attempt to exploit the attack Epiq Systems and Epiq Class Action suffered, Karter subsequently filed this lawsuit under the California Consumer Privacy Act ("CCPA") seeking statutory damages for himself and a putative class of California consumers. His Amended Complaint fails as a matter of law for two independent reasons, and should be dismissed.

*First*, Karter cannot meet the threshold requirement for filing suit under the CCPA against Epiq Systems or Epiq Class Action because neither entity is a "business" covered by the CCPA. The CCPA only permits private lawsuits against

1

covered "businesses," not "service providers." To qualify as a "business" under the CCPA, Epiq Systems and Epiq Class Action must not only "collect[] consumers' personal information," but also "determine[] the purposes and means of processing" that information. Yet Karter concedes in his Amended Complaint that Epiq Systems and Epiq Class Action are *providers of legal services to other businesses*—they only receive and process consumers' information on behalf of their clients pursuant to written contracts that dictate the "purpose" of any use or processing of that information. Epiq Class Action only receives and uses personal information from individuals such as Karter to provide a legal service—class action administration—to its clients, which are law firms and class action defendants, not individual class members like Karter. Epiq Systems likewise only maintains consumer data as part of the litigation data hosting services it provides to its clients and does not control the purposes for which the data are used or processed. Both Defendants are thus, at most, "service providers" under the CCPA because they "process[] information on behalf of" their clients and obtain and use consumers' personal information only "for the specific purpose of performing the services specified in the contract[s]" with their clients. The Amended Complaint does not *and cannot* allege any factual support to show that either Epiq Systems or Epiq Class Action is a covered "business" under the CCPA. Karter therefore simply has no right of action against either Defendant.

*Second*, Karter provides no factual support for his speculative allegations that his "nonencrypted and nonredacted" personal information is "now in the hands of hackers," along with the personal information of some unknown number of other California consumers. He alleges that his personal data was stolen during the attack, despite having made no attempt to investigate this claim and ignoring the Defendants' public statements to the contrary. There is no basis for—and no truth

2

to—these allegations, which are insufficient to "nudge" Karter's claim "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Karter simply recites the language of the CCPA private right of action and apparently hopes that what he says is true. His mere hoping does not satisfy Rule 8 of the Federal Rules of Civil Procedure.

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

## STATEMENT OF RELEVANT FACTS

### A.    Epiq Systems and Epiq Class Action Suffer A Ransomware Attack

On February 29, 2020, Epiq Systems and Epiq Class Action suffered a ransomware attack. Ransomware is a type of malicious software, or malware, designed to deny access to a computer system or data until a ransom is paid.[1] This malicious encryption can affect almost any kind of file or data, even if those files or data are already encrypted by the victim in the normal course of business.[2]

The ransomware attack on Epiq Systems and Epiq Class Action involved a type of ransomware called RYUK and related malware called "TrickBot," which were deployed by malicious actors on the companies' computer networks. RYUK uses encryption to block access to a system, device, or file until a ransom is paid. It is often placed on a system by other malware, most notably TrickBot.[3] Once on a

---

[1] The Cybersecurity and Infrastructure Security Agency, *Ransomware*, WWW.US-CERT.CISA.GOV, https://us-cert.cisa.gov/Ransomware (last visited Mar. 26, 2021).

[2] *See* Philip Bates, *Why Encrypting Your Data Won't Protect You From Ransomware*, MUO, (June 28, 2017), https://www.makeuseof.com/tag/encrypting-data-wont-protect-ransomware/.

[3] *See* Kimberly Goody, et al., *A Nasty Trick: From Credential Theft Malware to Business Disruption*, FIREEYE (Jan. 11, 2019), https://www.fireeye.com/blog/threat-

3

system, RYUK spreads through the network before beginning the encryption process. Unlike most data breaches, the *modus operandi* of the ransomware variant used in the attack on Epiq Systems and Epiq Class Action is to disrupt businesses rather than steal personal data.[4]

As a result of the ransomware attack, some of Epiq Systems' and Epiq Class Action's servers and data were encrypted—for files that were already encrypted in the regular course of business, double-encrypted—rendering them and the data on them inaccessible and unreadable to anyone. In response, Epiq Systems and Epiq Class Action deployed multiple tools to thwart the attack, took their systems offline, determined the nature and extent of the unauthorized activity on their systems, and worked diligently to safely and securely restore their systems to full operations.[5]

Over the weeks that followed the ransomware attack, Epiq Systems and Epiq Class Action provided periodic updates to their clients and the public about the

---

research/2019/01/a-nasty-trick-from-credential-theft-malware-to-business-disruption.html.

[4] *See* Van Ta, Aaron Stephens, *It's Your Money and They Want It Now — The Cycle of Adversary Pursuit*, FIREEYE (Mar. 31, 2020), https://www.fireeye.com/blog/threat-research/2020/03/the-cycle-of-adversary-pursuit.html (noting that threat actors like the one involved in the ransomware attack on Epiq Systems and Epiq Class Action cost organizations millions of dollars "due to business disruption and ransom payments," not data theft). Some ransomware attackers using ransomware variants other than RYUK—primarily a variant called Maze—have started to steal data in addition to encrypting files on the victim's systems. *See e.g.*, Pieter Arntz, *Maze: the ransomware that introduced an extra twist*, Malwarebytes Labs (May 29, 2020), https://blog.malwarebytes.com/threat-spotlight/2020/05/maze-the-ransomware-that-introduced-an-extra-twist/.

[5] Epiq Systems, Epiq News, *Client Systems Restored* (March 26, 2020), https://www.epiqglobal.com/en-us/about/news/corporate/client-systems-restored.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

attack and the companies' response. In a March 26, 2020, statement on its website, Epiq Systems announced that "all client-facing systems globally are back up and running. We began restoring full functionality for client systems two weeks ago, and have now completed our restoration and hardening activities for all client-facing environments."[6]

Epiq Systems also publicly announced that it had "found *no evidence that any client data was accessed, misused, or exfiltrated*," and that "[t]here has been no evidence of malicious activity in our system since March 1, 2020, and the attack did not impact our backup systems or data."[7]

## B.   **The California Consumer Privacy Act**

The CCPA is a sweeping new consumer privacy law that became operative on January 1, 2020. In relevant part, the CCPA permits California consumers to bring civil suits against a "business" for injunctive or declaratory relief and statutory damages between $100 and $750 "per consumer per incident or actual damages, whichever is greater." Cal. Civ. Code § 1798.150(a)(1)(A)–(C).

The CCPA's private right of action is limited to consumers "whose nonencrypted and nonredacted personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the *business's* violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information." *Id.* § 1798.150 (emphasis added). To prevail on a claim under the

---

[6] *Id.*

[7] *Id.* (emphasis added). In an earlier update, dated March 19, 2020, Epiq Systems also disclosed that "we have found no evidence that any client data has been accessed, misused, or extracted." *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

CCPA, therefore, a private citizen plaintiff must prove five separate elements: (i) *as a threshold matter*, that the defendant is a covered "business" under the CCPA, and not a "service provider"—because the latter are not subject to consumer suits brought under the CCPA; (ii) that the defendant possessed the plaintiff's "personal information"; (iii) that this personal information was "exfiltrated"; (iv) that, if the plaintiff's information was actually exfiltrated, it was in a "nonencrypted and nonredacted" form; and (v) that this exfiltration was a direct result of the defendant's failure to "implement and maintain reasonable security procedures and practices." *See id.* §§ 1798.150, 1798.140.

The CCPA defines a "business" as a for-profit entity that "collects consumers' personal information or on the behalf of which that information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information." *Id.* § 1798.140(c)(1). The CCPA separately defines a "service provider" as an entity that "processes information on behalf of a business and" is a company "to which the business discloses a consumer's personal information for a business purpose pursuant to a written contract." *Id.* § 1798.140(v). A private citizen may sue a "business" under the CCPA, *id.* § 1798.150(a)(1), but not a "service provider"—which can only be sued by the California Attorney General, *id.* § 1798.155(b).

The CCPA's distinction between a "business" and a "service provider" is indicative of the law's primary concern with giving California residents more control over their personal information and its focus on regulating companies that sell consumers' personal information.[8] For example, one of the statute's core

---

[8] *See* Lauren Davis, *The Impact of the California Consumer Privacy Act on Financial Institutions Across the Nation*, 24 N.C. Banking Inst. 499, 503 (2020).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

privacy provisions requires *businesses* that sell consumers' personal information—but not *service providers*—to provide those consumers with notice of disclosure of personal information and the right to opt-out of such disclosures. *See id.* § 1798.120.

Separately, the CCPA also requires a consumer to provide an alleged violator written notice of the alleged CCPA violation, *id.* § 1798.150(b), and gives the business 30 days to "cure" the violation and provide the consumer with "an express written statement that the violations have been cured and that no further violations shall occur." *Id.* A consumer may only pursue statutory damages if the business does not cure the alleged violation and provide the required written statement. *Id.*

## C.   **The Amended Complaint**

Plaintiff Karter's sole claim is that Epiq Systems and Epiq Class Action violated the CCPA as a result of the ransomware attack they suffered in 2020. (*Id.* ¶¶ 38–45.) He purports to represent himself and a class of "[a]ll persons residing in California whose nonredacted and nonencrypted personal information was compromised in the data breach(es) affecting Epiq's network(s) in 2020." (*Id.* ¶ 29.) He seeks injunctive relief "in the form of an order enjoining Defendant from continuing to fail to implement reasonable procedures to protect Plaintiff's and the Class's personal information" (*id.* ¶ 44), without specifying what such relief would entail or how Epiq Systems or Epiq Class Action have failed to implement reasonable procedures to protect consumers' personal information. He also seeks "statutory damages in an amount not less than one hundred dollars ($100) and not greater than seven hundred and fifty ($750) per consumer per incident." (*Id.* ¶ 45.)

In response to Epiq Systems' initial motion to dismiss, Karter amended his complaint to add a conclusory allegation that Epiq Systems and Epiq Class Actions are "businesses" under the CCPA. (*Id.* ¶¶ 23, 40.) Yet Karter acknowledges that Defendants "collect consumers' personal information pursuant to contractual

7

1   agreements with their clients, including for the purposes of class action

2   administration," and admits that "the purpose of Epiq's data collection may be

3   subject to contract" (*id.* ¶ 23)—essentially conceding facts that make both

4   Defendants "service providers" under the CCPA, not covered "businesses." Karter

5   then simply parrots the definition of "business" under the CCPA in a conclusory

6   allegation that Defendants "themselves determine the purposes and means of

7   processing the data they collect" and "perform processing functions that are not

8   determined by Epiq's clients." (*Id.*)

9          Regarding the merits of his claim, Karter alleges that he submitted "a tax

10   form containing [his] social security number to Epiq in relation to a class action

11   settlement which Epiq administered and in which [he] was a class member." (*Id.* ¶

12   25.) Karter fails to provide any other details relevant to assessing his claim,

13   however, including when, to which Epiq entity, or in connection with which matter

14   he provided this information.

15          Karter further alleges—without any factual basis—that the "malware and

16   ransomware exfiltrated sensitive data on Epiq's network(s) and the data is now in

17   the hands of the perpetrators." (*Id.* ¶¶ 6, 26.) This conclusory allegation, repeated

18   several times throughout the Amended Complaint, is the sum total of Karter's claim

19   that *his* data was subject to "exfiltration, theft, or disclosure" (*id.* ¶ 26), a required

20   element of a claim under the CCPA. Karter provides no factual support for this

21   allegation, which is contradicted by Epiq Systems' public statements about the

22   attack. Karter does not claim to have conducted any factual investigation into

23   whether his data was actually exfiltrated or acquired by third parties, and points to

24   *no evidence* that his (or *anyone's*) personal information was made available on the

25   dark web or elsewhere as a result of the ransomware attack. To satisfy the statutory

26   requirement that his data was both "nonencrypted" and "nonredacted" at the time of

27

28

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1   the alleged exfiltration, Karter likewise merely parrots the statutory language

2   without providing factual support or any indication that he conducted an

3   investigation to support that conclusory allegation. (*Id.* ¶ 7.)

4        The remainder of Karter's Amended Complaint is a rote recitation—often in

5   long block quotes—of the language of the CCPA and requirements to certify a class.

6   **ARGUMENT**

7        Dismissal pursuant to Rule 12(b)(6) "is appropriate if the plaintiff has not

8   alleged enough facts to state a claim to relief that is plausible on its face." *Ebner v.*

9   *Fresh, Inc.*, 838 F. 3d 958, 962–63 (9th Cir. 2016). "Determining whether a

10  complaint states a plausible claim for relief is a context-specific task that requires

11  the reviewing court to draw on its judicial experience and common sense." *Id.*

12  (internal quotation marks omitted). Whatever the facts alleged, dismissal is

13  warranted when the plaintiff fails to articulate a viable theory of recovery.

14  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). Here, Karter's

15  complaint fails for two reasons. First, Karter cannot sue Epiq Systems or Epiq Class

16  Action under the CCPA as a matter of law because neither entity is a covered

17  "business" under the statute. Second, even if the CCPA were available to Karter, his

18  allegations that his "personal information" was "exfiltrated" in a "nonencrypted and

19  nonredacted" form are far too conclusory to support a plausible claim.

20  **I.**    **The CCPA Does Not Permit a Private Right of Action Against Epiq**

21         **Systems or Epiq Class Action**

22       At the threshold, Karter—a private citizen—is only permitted to assert a

23  claim under the CCPA against Epiq Systems and Epiq Class Action if he can

24  establish that these entities are covered "businesses," not mere "service providers."[9]

25  _____

26  [9] Only the California Attorney General is authorized to bring civil legal claims

27  under the CCPA against service providers. Cal. Civ. Code § 1798.155(b).

28  9
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1    Karter's conclusory allegations that the Epiq Defendants are businesses and not

2    service providers are facially implausible and contradicted by Karter's own

3    allegations about the services that the Epiq Defendants provide to their clients. He

4    therefore has failed to clear this threshold requirement to filing suit under the CCPA,

5    and has no cognizable claim against either Epiq Systems or Epiq Class Action. *See*

6    *Henderson v. Borough of Baldwin*, No. 15-1011, U.S. Dist. LEXIS 127609, at *18–

7    19 (W.D. Pa. Sept. 20, 2016) (plaintiff failed to state a cognizable HIPAA claim

8    because he could not allege that defendant employer was a covered entity under the

9    statute); *Beaird v. Gonzales*, 495 F. Supp. 2d 81, 83 n.2 (D.D.C. 2007) ("Plaintiffs

10   fail to state a claim under the ADA because it does not apply to the federal

11   government.").

12        As relevant here, the CCPA defines a "business" as a for-profit entity that

13   "collects consumers' personal information or on the behalf of which that

14   information is collected and that alone, or jointly with others, *determines the*

15   *purposes and means* of the processing of consumers' personal information." Cal.

16   Civ. Code § 1798.140(c)(1) (emphasis added). The CCPA separately defines a

17   "service provider" as an entity that "processes information *on behalf of* a business

18   and" is a company "to which the business discloses a consumer's personal

19   information for a business purpose pursuant to a written contract." Cal. Civ. Code

20   § 1798.140(v) (emphasis added).

21        Karter's original complaint failed to allege that either Epiq Defendant was a

22   covered business. In his Amended Complaint, Karter has attempted to correct this

23   pleading defect by adding a conclusory allegation that both entities are "businesses"

24   under the CCPA, because they "themselves" allegedly "determine the purposes and

25   means of processing the data they collect" and "perform processing functions that

26   are not determined by Epiq's clients." (Am. Compl. ¶ 23.) This new allegation does

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

1   not remedy Karter's defective complaint because Karter has done nothing more than
2   recite the statutory definition of a business. *See, e.g.*, *Duran v. Maxim Healthcare*
3   *Servs. Inc.*, No. CV 17-01072-AB (EX), U.S. Dist. LEXIS 225777, at *12 (C.D.
4   Cal. Mar. 9, 2018) (dismissing FLSA claims because "Plaintiffs' allegations
5   parrot[ed] the statutory language and d[id] not provide specific facts to support" the
6   claims); *Blash v. Wells Fargo Bank*, No. SACV14-02069CJC (RNBx), 2015 WL
7   12791376, at *5 (C.D. Cal. Feb. 26, 2015) (Carney, J.) (dismissing California
8   Consumer Reporting Agency Act claim because it relied entirely on "threadbare
9   recitals" of the statutory language); *Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893,
10  899 (N.D. Ill. 2012) ("Although Worix states in his complaint that MedAssets is a
11  'covered entity,' … legal conclusions and conclusory allegations merely reciting the
12  elements of the claim are not entitled to the presumption of truth." (citing *Ashcroft v.*
13  *Iqbal*, 556 U.S. 662 (2009))); *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470,
14  480 (6th Cir. 2020) (affirming dismissal of complaint for failure to adequately allege
15  defendants were covered "debt collectors" where pleadings were "no more than
16  conclusions" and therefore "not entitled to the assumption of truth.").

17       Indeed, in the same new paragraph, Karter concedes that both Epiq
18  Defendants "collect consumers' personal information pursuant to contractual
19  agreements with their clients, including for the purposes of class action
20  administration" (Am. Compl. ¶ 23)—a key concession that fits them squarely within
21  the definition of "service provider" under the CCPA. Karter also concedes that "the
22  purpose of Epiq's data collection may be subject to contract" (*id.*), another key
23  characteristic of exempt service providers, not covered businesses.

24       The Amended Complaint elsewhere explicitly concedes that Defendants
25  process information on behalf of other businesses. Specifically, the Amended
26  Complaint alleges that Epiq Systems is "a worldwide *provider of legal services*,

27
28

serving law firms, corporations, financial institutions and government agencies." (Am. Compl. ¶ 1 (emphasis added).)[10] To the extent Epiq Systems receives and processes consumer information, that is done on behalf of its clients—"helping them streamline the administration of business operations, class action and mass tort, court reporting, eDiscovery, regulatory, compliance, restructuring, and bankruptcy matters." (*Id.*)

The Amended Complaint further alleges that Epiq Class Action "administers class action and mass tort settlements and judgments *for litigants and courts alike*." (*Id.* ¶ 2 (emphasis added).) If any party to the class action settlement administration process is a "business" under the CCPA, it is the client that hires Epiq Class Action. It is the clients that decide which personal information to collect and how, not Epiq Class Action. And it is the clients that determine the purpose for collecting that information, not Epiq Class Action. Epiq Class Action, on the other hand, only receives and processes information to satisfy its clients' obligations to administer the class action settlements, always pursuant to written contracts.

For these reasons, Epiq Systems and Epiq Class Action are not companies "on whose behalf" consumer data is processed. Rather, they are companies that "process[] information *on behalf of*" their clients and "to which [their clients] disclose[] a consumer's personal information for a business purpose pursuant to a written contract." Cal. Civ. Code § 1798.140(v).

The fact that Karter alleges he provided his personal information directly to Epiq Class Action does nothing to salvage his defective claim. The California Attorney General's implementing regulations already considered this precise

---

[10] Quoting Epiq Systems, *About Epiq*, https://www.epiqglobal.com/en-us/about/overview (last visited Mar. 26, 2021).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

scenario, and clarify that the distinction between a "business" and "service provider" remains even where the service provider collects information directly from consumers. *See* 11 Cal. Code Reg. 999.314(b). If a business "directs a second entity to collect personal information directly from a consumer" on the "first business's behalf, and the second entity would otherwise meet the requirements and obligations of a 'service provider' under the CCPA and these regulations, the second entity shall be deemed a service provider of the first business for purposes of the CCPA and these regulations." *Id.* This is consistent with the CCPA's aim of empowering California consumers to sue the businesses who direct the collection and use of their personal information, not the service providers who might collect that information at the businesses' direction. It is of no moment that Epiq Class Action may have received Karter's personal information directly from him, because—as Karter's own allegations establish—it indisputably did so on behalf of a client to administer a class action settlement.

## II.   <u>Karter Does Not Plausibly Allege A Violation Of The CCPA</u>

The Amended Complaint's allegations with respect to the central elements of Karter's CCPA claim are inadequate to state a plausible claim for relief. Karter offers no factual support for his conclusory allegation that his personal information was exfiltrated during the ransomware attack or that his information was both nonencrypted and nonredacted at the time of the alleged exfiltration—both required for a claim under the CCPA.

Karter alleges that as a result of the ransomware attack Epiq Systems and Epiq Class Action suffered, his personal information was "exfiltrated" (Am. Compl. ¶ 6), "stolen" (*id.* ¶ 7), subject to "exfiltration" (*id.* ¶ 19), "subject to an unauthorized access and exfiltration, theft, or disclosure" (*id.* ¶ 26), "exfiltrated and subject to unauthorized disclosure" (*id.* ¶ 42), and that his "information is now in the

hands of hackers" (*id.* ¶ 28). Despite his repeated incantation of the specter of stolen data, Karter pleads no facts to support these conclusory allegations. He makes no mention of any effort to investigate whether his data was stolen or exfiltrated, and the allegation is contradicted by Epiq Systems' public statements that it had "found no evidence that any client data was accessed, misused, or exfiltrated" as a result of the ransomware attack.[11] In the end, Karter's allegations are nothing more than "a shot in the dark," *Helstern v. City of San Diego*, No. 13-CV-0321-LAB (RBB), U.S. Dist. LEXIS 97707, at *14-15 (S.D. Cal. July 11, 2013), that he hopes to use to "unlock the doors of discovery," *Iqbal*, 556 U.S. at 678–79. That is not enough to overcome a motion to dismiss.

Even in cases where there is no dispute that data was stolen during a data breach, courts have held that conclusory allegations of data theft cannot survive a motion to dismiss. In *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 880 (N.D. Ill. 2014), for example, the plaintiff alleged that her personal information was "stolen and compromised" as a result of the defendant's data breach, but the court found that to be "a conclusion in need of factual support." *Id.* Like the Amended Complaint here, the plaintiff's complaint in *Strautins* "rest[ed] entirely on the assumption that her PII was disclosed because (1) the [defendant] was cyber-attacked and (2) because she filed tax returns in South Carolina" and her data was therefore in the database that was attacked. *Id.* The court held that "the fact that hackers gained some access to a . . . database does not necessarily mean, or even plausibly suggest, that they obtained access to all of the data in [defendant's] possession, and the complaint provides no basis to infer that the hacker (or hackers)

---

[11] *See* https://www.epiqglobal.com/en-us/about/news/corporate/client-systems-restored (last visited Mar. 26, 2021).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

obtained [plaintiff's] data." *Id.*; *see also Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.*, No. 2:19-CV-798-RAH-SMD, U.S. Dist. LEXIS 125394, at *15 (M.D. Ala. July 16, 2020) (holding that "the fact that the Breach occurred cannot in and of itself be enough, in the absence of any imminent or likely misuse of protected data, to provide Plaintiffs with standing to sue," particularly where "Plaintiffs fail to allege that they or members of the putative class have suffered actual identity theft. Instead, their pleading speaks of possibilities and traffics in maybes.").

Such conclusory allegations failed in *Strautins*—a case where data was admittedly stolen—and they are doubly insufficient in a case such as this, arising from a ransomware attack involving no evidence of exfiltration or effort by the plaintiff to conduct even the most basic pre-filing investigation.

By contrast, other plaintiffs bringing claims under the CCPA have had at least a plausible basis for alleging exfiltration before filing their complaints. In a recently-dismissed case against Walmart alleging a violation of the CCPA, for example, the plaintiff apparently conducted an investigation before filing his complaint to confirm that his personal information was available on the dark web as a result of the defendant's data breach. *See Gardiner v. Walmart Inc.,* No. 4:20-cv-04618-JSW, Dkt. No. 43 at 1-2 (N.D. Cal. Mar. 5, 2021) ("Plaintiff alleges that his data is currently being sold on the dark web as a result of the [Walmart] data breach and that he has communications with hackers affirming that the accounts being sold belong to Walmart customers."). In several other cases involving CCPA claims, the plaintiffs' claims arose from the fact that their personal information had been exfiltrated as part of a publicly-disclosed data breach. *See, e.g.*, *Atkinson v. Minted, Inc.*, No. 3:20-cv-03869 (N.D. Cal. June 11, 2020) (claim arising out of data breach that resulted in the exfiltration of 73.2 million records that included passwords, names, email addresses, and other information); *Cercas v. Ambry Genetics Corp.*,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

No. 8:20-cv-00791 (C.D. Cal. Apr. 23, 2020) (claim arising out of a data breach that resulted in the exposure and exfiltration of sensitive personal and medical information of more than 232,200 patients); *Rahman v. Marriott Int'l*, No. 20-cv-00654 (C.D. Cal. Apr. 3, 2020) (claim arising out of a cybersecurity breach affecting 5.2 million consumers, which Marriott announced on March 31, 2020 and about which it sent e-mails to affected customers).

Here, Karter undertook no investigation to determine whether his personal information had been exfiltrated or was in fact accessible on the dark web, and the Epiq Defendants stated publicly that they had seen no evidence that any client data had been exfiltrated as a result of the ransomware attack. Karter's conclusory allegations, unsupported by fact, do not adequately plead a violation of the CCPA because they "simply don't raise the right to relief [above] the speculative level." *Helstern*, 2013 U.S. Dist. LEXIS 97707, at *14–15. The Court must "not 'unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678–79).

Karter makes similar repeated and unsupported allegations that his personal information was "nonencrypted and nonredacted." (Am. Compl. ¶¶ 7, 19, 42.) This allegation again simply recites one element of the claim as if it were a factual allegation. *See, e.g.*, *Duran*, 2018 U.S. Dist. LEXIS 225777, at *12 (dismissing claims based on allegations that "parrot[ed] the statutory language and d[id] not provide specific facts"); *Blash*, 2015 WL 12791376, at *5 (dismissing claim based on "threadbare recitals" of statutory language); *Babadjanian v. Deutsche Bank Nat'l. Trust Co.*, No. CV 10-02580 MMM (RZx), 2011 U.S. Dist. LEXIS 165392, at *36 (C.D. Cal. Mar. 29, 2011) ("This conclusory allegation, which essentially recites the elements of a [statutory] claim, is insufficient to satisfy Rule 8."). As with Karter's allegation that his personal information was exfiltrated, the allegation

16

that his information was not encrypted or redacted is "a shot in the dark" that is inadequate to plead a CCPA violation. *Iqbal*, 556 U.S. at 678–79; *Helstern*, 2013 U.S. Dist. LEXIS 97707, at *14–15.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Amended Complaint against Epiq Systems and Epiq Class Action in its entirety with prejudice.

Dated:  March 26, 2021       MITCHELL SILBERBERG & KNUPP LLP

*/s/ Jean Pierre Nogues*
Jean Pierre Nogues

2049 Century Park East, 18th Floor
Los Angeles, CA 90067
Telephone:   (310) 312-3152
Facsimile:    (310) 312-3100

MICHAEL F. BUCHANAN (*Pro Hac Vice*)
mfbuchanan@pbwt.com
PETER A. NELSON (*Pro Hac Vice*)
pnelson@pbwt.com
JEFFREY C. SKINNER (*Pro Hac Vice*)
jskinner@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone:   (212) 336-2350
Facsimile:    (212) 336-2222

*Counsel for Defendants Epiq Systems, Inc. and Epiq Class Action & Claims Solutions, Inc.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS