Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
**THE AFTERGOOD LAW FIRM**
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Patrick H. Peluso*
ppeluso@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Pro Hac Vice*

*Attorneys for Plaintiff and the Alleged Class*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN KARTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EPIQ SYSTEMS, INC., a Missouri corporation, and EPIQ CLASS ACTION & CLAIMS SOLUTIONS, INC., a Rhode Island corporation,<br><br>Defendants. | Case No. 8:20-cv-01385-CJC-KES<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: April 26, 2021<br>Time: 1:30 PM<br>Judge: Hon. Cormac J. Carney<br>Place: Courtroom 9B<br><br>Date Action Filed: July 29, 2020 |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................... iii

**I.      INTRODUCTION** ........................................................................................1

**II.     BACKGROUND** ..........................................................................................2

**III.    ARGUMENT** ...............................................................................................2

      **A.    Plaintiff Has Adequately Stated A Claim For Relief** ........................2

            **1.    Epiq may be held liable under the CCPA as a business—its actions fall beyond the definition of a service provider** ........2

            **2.    Plaintiff has pleaded a violation of the CCPA above the speculative level** ...........................................................................6

**IV.     CONCLUSION** ............................................................................................8


# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................. 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) ................................................... 6

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ......................... 6

**STATUTES, RULES, AND OTHER SOURCES**

California Consumer Privacy Act ("CCPA")
      Cal. Civil Code § 1798.100 *et seq.* ................................................... 6, 10–12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants Epiq Systems, Inc. and Epiq Class Action & Claims Solutions, Inc. (collectively "Epiq" or "Defendants") violated the California Consumer Privacy Act ("CCPA" or the "Act") by failing to implement reasonable security practices and procedures to protect consumer data in its possession. In response to the First Amended Complaint, Epiq asks the Court to dismiss Plaintiff's claims arguing primarily that it is merely a "service provider" under the CCPA. However, fortunately for Plaintiff and the alleged Class, Epiq's attempt to shield itself from liability as a "service provider" under the CCPA is meritless, as its actions exceeded the bounds of that term's definition under the Act. Further, Plaintiff's allegations that his data was subject to exfiltration, theft, or disclosure rise above the speculative level. Karter has met the requirements for this stage of pleadings, and Defendant's factual dispute is not sufficient to support dismissal.

Accordingly, Defendant's Motion to Dismiss should be denied.

## II. BACKGROUND

In early 2020, Epiq's computer systems were hit by a ransomware attack. (Am. Compl. at ¶¶ 3-4, 19.) Plaintiff had previously submitted a tax form to Epiq in connection with a class action settlement claim that contained his social security number, and he believes this form was on Epiq's servers and exfiltrated, stolen, or otherwise disclosed as a result of the ransomware attack. (*Id.* ¶ 25.) In light of available information about Defendant's use of outdated software, Plaintiff further alleges that Epiq failed to satisfy its duties under the CCPA to maintain reasonable security procedures. (*Id.* ¶¶ 11, 26-27.)

Epiq has confirmed that "Epiq Systems and its subsidiaries" suffered a ransomware attack on February 29, 2020. (Dkt. 55 at 1.) Epiq also admits that

ransomware and malware were used in the attack as alleged by Plaintiff in his complaint. (Dkt. 55 at 3.) Epiq disputes, however, that Plaintiff's personal data, or the data of any other consumers, was exfiltrated or disclosed—in support, Epiq points to its own public announcement that it "found no evidence" of access or exfiltration. (*Id.* at 5.) No discovery has yet taken place to test Epiq's public statements.

## III. ARGUMENT

Defendant's motion to dismiss should be denied. At this early stage in the pleadings, Plaintiff has met his pleading requirements by stating a claim for relief above the speculative level. As explained in detail below, the Court should deny Epiq's motion in its entirety.

### A. Plaintiff Has Adequately Stated A Claim For Relief.

Epiq contends that Plaintiff has failed to state a claim for relief. (Dkt. 55 at 9-16.) In support, Epiq posits that it cannot be held liable as a business under the CCPA, likening itself to a "service provider" as defined by the statute. (*Id.* at 9-13.) Epiq also claims that Karter has not plausibly pleaded a violation of the CCPA, contending that Plaintiff's factual allegations related to the ransomware attack do not raise the right to relief above the speculative level. (*Id.* at 13-16.) As explained below, neither of Epiq's arguments succeed. Plaintiff has met his pleading requirements, and the Court should deny the Motion to Dismiss.

#### 1. Epiq may be held liable under the CCPA as a business—its actions fall beyond the definition of a service provider.

Epiq begins its arguments for 12(b)(6) dismissal by claiming that the CCPA's protections do not apply to Epiq or its actions. (Dkt. 55 at 9.) Epiq claims that it is not a "business" as defined by the statute, but rather a "service provider," to which

liability is not ascribed. But Epiq fits within the "business" definition, and its actions extend beyond the boundaries of what may constitute a "service provider."[1] Based on the allegations, Epiq can be held liable for violation of the CCPA.

As noted in the Complaint, the CCPA creates the following cause of action against "businesses":

> Any consumer whose nonencrypted and nonredacted personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the *business*'s violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action . . . .

CAL. CIVIL. CODE § 1798.150(a)(1) (emphasis added). The statute assigns liability to a "business," which is defined as a for-profit corporation or other legal entity that "collects consumers' personal information or on the behalf of which that information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information" and does business in California. *Id.* § 1798.140(c)(1). The business must also meet at least one of the following thresholds: (1) annual gross revenues of more than $25,000,000; (2) annual aggregate purchase, receipt, sale, or sharing of personal information of 50,000 or more consumers, households, or devices; (3) 50 percent or more of annual revenues derived from selling consumers' personal information. *Id.* § 1798.140(c)(1)(A)–(C).

Here, Epiq meets the CCPA's definition of a "business." Epiq is a for-profit

---

[1] To the extent that the Court may accept the claim that Plaintiff has made a "pleading defect" with regard to Defendant's status as a business, Plaintiff can amend his complaint to include further allegations.

corporation that does business in California.[2] It collects consumer personal information and, either alone or jointly with its clients, determines the purposes and means of processing that information. Epiq would have the Court believe that, because it collects information pursuant to contractual agreements with its clients, it does not determine the purposes and means of *processing*. (Dkt. 55 at 10.) But "processing" is defined by the CCPA as "any operation or set of operations that are performed on personal data or on sets of personal data, whether or not by automated means." CAL. CIVIL. CODE § 1798.140(q). Epiq's contracts may inform the purposes and means of *collecting* data from consumers, but Defendants—as Plaintiff alleges—are sophisticated data processing entities with proprietary software. (*See* 35-2 at ¶ 23.) The notion that their clients would tell Epiq how or why to perform automated or other operations on the data collected is preposterous (and would impermissibly require the court to view such inferences in a light most favorable to Epiq). Further, Epiq easily exceeds the first threshold identified in the statute; Epiq boasted annual revenue of $1.7 billion in 2017,[3] and more than $1 billion in 2019.[4] Accordingly, Epiq qualifies as a "business" under the CCPA.

Epiq contends that the Court should instead determine as a matter of law—before even a single page of discovery is produced—that Epiq is a "service provider," which is separately defined and not subject to the same liability. A service provider is a for-profit corporation or other entity that "that processes information on behalf of a business *and to which the business discloses a*

---

[2] In addition to collecting data from California consumers, Epiq maintains an office in Los Angeles. *See* https://www.epiqglobal.com/en-us/about/locations/north-america/united-states/west-coast/los-angeles-figueroa.

[3] https://www.epiqglobal.com/en-us/about/news/corporate/epiq-inc-5000-fastest-growing-private-companies

[4] https://www.epiqglobal.com/en-us/about/news/corporate/epiq-named-industry-titan-by-inc-magazine

*consumer's personal information* for a business purpose pursuant to a written contract," provided that the contract prohibits the use of such information beyond the agreed purpose. CAL. CIVIL. CODE § 1798.140(v) (emphasis added). Epiq may process information on behalf of its clients, but consumer information is not disclosed to it by its clients—Epiq collects consumer data directly from consumers. Indeed, Karter submitted the tax form containing his social security number directly to Epiq. (Am. Compl. at ¶ 25.) Thus, Epiq does not fit the statutory definition of a "service provider."

Epiq's attempt to defend its actions as immune from scrutiny does not pass muster. Epiq collects personal information from consumers, not through its clients, and it determines the means and purposes of processing such information. Karter has made sufficient factual allegations to suggest that Epiq is not a "service provider," but a "business." At most, Epiq's flawed defense raises factual issues that prevent the Court from dismissing Plaintiff's claim or granting judgment before any discovery is exchanged. Indeed, Plaintiff specifically alleges that "Defendants are 'businesses' as that term is defined in the CCPA, and they are therefore subject to liability under the statute". (Am. Compl. at ¶ 40.) Defendants cannot secure dismissal by simply disagree with Plaintiff's allegations.

### 2. Plaintiff has pleaded a violation of the CCPA above the speculative level.

Epiq next claims that Plaintiff has not pleaded enough factual allegations to state a plausible claim for relief under the CCPA. (Dkt. 55 at 13-16.) Epiq characterizes Karter's assertions about the nature and extent of the ransomware attack as a "shot in the dark" that supposedly fails to raise the right to relief above the speculative level. (*Id.* at 14.) But that is not so. Plaintiff sets forth sufficient factual allegations about the attack, several of which have been confirmed by Epiq,

to support an inference that Epiq is liable. Karter is not required to prove his case at the motion to dismiss stage.

To survive a motion to dismiss, a complaint must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555-57 (2007)). To withstand dismissal pursuant to Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 570. All factual allegations in the complaint must be taken as true and "construed in the light most favorable to the nonmoving party." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A complaint should not be dismissed unless it appears "beyond doubt" that the plaintiff can prove no set of facts that would entitle them to the relief sought. *Id.*

Plaintiff squarely alleges that Epiq failed to reasonably protect consumer information from the ransomware attack. Karter alleges the approximate date of the attack (Am. Compl. at ¶¶ 3, 19), the extent and type of attack (*id.* ¶¶ 19, 24-26), the personal information that Epiq possessed (*id.* ¶¶ 24-26), the unauthorized exfiltration or disclosure of such information (*id.* ¶¶ 6, 26, 42), and the inadequacy of Epiq's systems that allegedly enabled the attack (*id.* ¶¶ 7, 9, 11, 25). These are not "threadbare recitals" of statutory language—they are detailed facts that suggest a violation of the CCPA. If accepted as true, as they must be at this stage of the pleadings, Plaintiff's allegations raise his right to relief well above the speculative level. *See Twombly,* 550 U.S. at 555, 570. From these allegations, the Court may reasonably infer that Epiq is liable for violating the CCPA.

Epiq has confirmed that Plaintiff correctly identified the date and the nature of the attack that Epiq and its subsidiaries suffered. Epiq doesn't address Plaintiff's

allegations related to its outdated software; Epiq only states that it implemented stricter controls and safer software after the attack occurred. Epiq does, however, challenge the allegations that Plaintiff's data was non-encrypted or non-redacted and that Plaintiff's data was supposedly exfiltrated by the ransomware attackers. At most, these challenges create factual disputes that may be resolved through discovery—they do not change the fact that Plaintiff has met Rule 8's pleading requirements.

  Epiq argues that Plaintiff's claim that his data was non-encrypted or non-redacted is "unsupported." Of course, without any discovery, neither Karter nor his counsel have access to exhaustive evidence of the state in which information was kept on Defendant's servers. But the factual allegations made by Plaintiff—particularly that Epiq did not utilize up-to-date software or security measures—give rise to the inference that the personal information of consumers possessed by Epiq at the time of the attack was not as secure as Epiq would have the Court believe.

  Similarly, Defendant's poorly-supported claim that no data was disclosed or exfiltrated in the attack does not warrant dismissal. Epiq attempts to create another factual dispute as to whether information was actually obtained by the ransomware attackers. Epiq denies that any data was taken, and its primary support is Epiq's public press release statement that it found "no evidence" of exfiltration. An untested, self-serving statement like this can hardly be considered controverting evidence, and the Court should not accept it as such. In any event, the statement does not negate Plaintiff's factual allegations; at best, it creates a factual dispute, which is insufficient to support dismissal of a complaint.

  In effect, Epiq asks the Court to dismiss Plaintiff's claim because he did not completely prove his case in the Complaint. But at this point in the proceedings, he is not required to do so. Plaintiff has made detailed factual allegations in his

Complaint that raise his right to relief above the speculative level and allow the Court to infer that Epiq is liable for the conduct alleged. He has met his burden to withstand dismissal pursuant to Rule 12(b)(6), and Defendants' motion should be denied.

## IV.   CONCLUSION

The Court should deny Defendant's motion to dismiss. Karter has adequately stated a claim for relief that rises above the speculative level. Defendant's factual disputes are insufficient to support dismissal. Accordingly, the Court should deny the motion, permit the parties to proceed, and award any such relief as it deems necessary and just.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | **BENJAMIN KARTER**, individually and on behalf of all others similarly situated, |
| Dated: April 5, 2021 | By:   /s/ Patrick H. Peluso  <br>          One of Plaintiff's Attorneys |
|  | Aaron D. Aftergood (239853)<br>aaron@aftergoodesq.com<br>**THE AFTERGOOD LAW FIRM**<br>1880 Century Park East, Suite 200<br>Los Angeles, CA 90067<br>Telephone: (310) 550-5221<br>Facsimile: (310) 496-2840 |
|  | Steven L. Woodrow*<br>swoodrow@woodrowpeluso.com<br>Patrick H. Peluso*<br>ppeluso@woodrowpeluso.com<br>**WOODROW & PELUSO, LLC**<br>3900 East Mexico Avenue, Suite 300 |

Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809
*Pro Hac Vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on April 5, 2021.

/s/ Patrick H. Peluso