| | |
|---|---|
| 1 | JEAN PIERRE NOGUES (SBN 84445) |
| | jpn@msk.com |
| 2 | MITCHELL SILBERBERG & KNUPP LLP |
| 3 | 2049 Century Park East, 18th Floor |
| | Los Angeles, CA 90067 |
| 4 | Telephone:  (310) 312-3152 |
| 5 | Facsimile:   (310) 312-3100 |
| 6 | MICHAEL F. BUCHANAN (*Pro Hac Vice*) |
| | mfbuchanan@pbwt.com |
| 7 | PETER A. NELSON (*Pro Hac Vice*) |
| 8 | pnelson@pbwt.com |
| | JEFFREY C. SKINNER (*Pro Hac Vice*) |
| 9 | jskinner@pbwt.com |
| 10 | PATTERSON BELKNAP WEBB & TYLER LLP |
| 11 | 1133 Avenue of the Americas |
| | New York, New York 10036 |
| 12 | Telephone:  (212) 336-2350 |
| 13 | Facsimile:   (212) 336-2222 |
| 14 | *Counsel for Defendants Epiq Systems, Inc. and Epiq Class Action & Claims Solutions, Inc.* |

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN KARTER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> EPIQ SYSTEMS, INC., a Missouri corporation, and EPIQ CLASS ACTION & CLAIMS RESOLUTION, INC., a Rhode Island corporation <br><br> Defendant. | CASE NO. 8:20-cv-01385-CJC-KES <br><br> CLASS ACTION <br><br> **DECLARATION OF MICHAEL F. BUCHANAN IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** <br><br> Date:    July 19, 2021 <br> Time:   1:30pm <br> Place:   Courtroom 9B <br> Judge:  Honorable Cormac J. Carney <br> Date Action Filed:    July 29, 2020 |

I, Michael F. Buchanan declare under penalty of perjury as follows:

1. I am a Partner at the law firm Patterson Belknap Webb & Tyler LLP. I am counsel for Defendants Epiq Systems, Inc. ("Epiq Systems") and Epiq Class Action & Claims Solutions, Inc. ("Epiq Class Action") (collectively, "Defendants") and have been admitted *pro hac vice* in the above-captioned proceeding. I submit this declaration in support of Defendants' Motion to Dismiss the Second Amended Complaint.

2. Attached hereto as Exhibit A is a true and correct copy of Epiq Class Action's Standard Services Agreement.

3. The Standard Services Agreement was previously submitted to the Court in connection with Defendants' initial motion to dismiss. Specifically, the Standard Services Agreement was attached as an exhibit to the Declaration of Michael O'Connor In Support of Motion to Dismiss. *See* Dkt. No. 35-2. In opposing Defendants' initial motion to dismiss, Plaintiff Karter did not dispute the authenticity of the Standard Services Agreement. *See* Dkt. No. 39.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:  June 1, 2021

                                 */s/ Michael F. Buchanan*
                                  Michael F. Buchanan

1
DECLARATION OF MICHAEL F. BUCHANAN IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# Exhibit A



**EPIQ CLASS ACTION & CLAIMS SOLUTIONS, INC.**
**TERMS AND CONDITIONS**

In consideration for Epiq Class Action & Claims Solutions, Inc. and/or its affiliate Hilsoft Notifications (together "Epiq") providing _____ ("Client") the Services, the following terms and conditions shall apply.

**1. SERVICES.** Epiq agrees to provide Client the services, none of which constitute legal advice, necessary to perform the tasks specified in the attached proposal and estimated pricing attached hereto (the "Services"). Client agrees, represents and warrants that the data provided to Epiq does not contain any data subject to applicable United States export control laws. Client further agrees, represents and warrants to Epiq that, prior to delivery of any data to Epiq, Client has obtained binding consents and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to access and use all data provided by Client in connection with its Services.

**2. PAYMENT FOR SERVICES AND EXPENSES.** Client agrees to pay Epiq those fees specified in the attached proposal and estimated pricing attached hereto, including all out-of-pocket expenses reasonably incurred in advance by Epiq in connection with the performance of the Services. Client acknowledges that such fees are estimates based upon information provided to Epiq by Client and that Epiq makes no representation that such fees shall equal the actual and final fees charged to Client, which may exceed or be less than such estimate. Billing rates may be adjusted from time to time by Epiq in its reasonable discretion, although billing rates generally are changed on an annual basis. Epiq shall invoice Client at least monthly. Client shall pay Epiq within thirty (30) days of its receipt of each such invoice, through wire transfer or other payment method approved in advance by Epiq. Disputes with respect to invoiced amounts shall be deemed waived if not raised in writing within a thirty-day period. Epiq may require Client to, and upon such request Client shall, prepay or provide an advance deposit for postage, paper, mailing costs, media placements, data files and other costs before a project begins which prepayment or deposit amount, at Epiq's request, will be supplemented by Client to satisfy the actual amount required. Subject to the foregoing, out-of-pocket expenses (including travel charges) will be billed as incurred and reimbursed by Client. All activity charges on a distribution account will be treated as out-of-pocket expenses. If needed, out of pocket media production expenses such as translation, press release and production shall be billed allowing a five percent (5%) commission to defray time associated with vendor contract negotiation, invoice review and issuance of payments. In the event payment is to be made from a settlement fund or an escrow account and such settlement fund or escrow account is not approved, created, or funded, Client shall be responsible for making all payments owed to Epiq pursuant to this Agreement. Additional overtime expenses for work in excess of eight hours per day or forty hours per week will be billed at hourly overtime rates for such services. Undisputed amounts that remain unpaid following their due date shall be subject to an interest charge of 12% per year. The acceptance by Epiq of any partial payment shall not constitute a waiver of Epiq's right to pursue the collection of any remaining balance.

**3. UNUSUAL MEASURES.** If the Client requires measures that are unusual and beyond normal business practice such as, but not limited to, CPA Audit, and/or Off Premises Storage of Data, the cost of such measures, if provided by Epiq, shall be charged to the Client. Said charges may be required in advance if Epiq deems it appropriate.

**4. TERM AND TERMINATION.** Either party may terminate this Agreement (a) upon 90 days prior written notice to the other party or (b) upon written notice to the other party in the event of any material breach of this Agreement if the party receiving such notice (i) fails to cure such breach within thirty (30) days after notice by the non-breaching party or (ii) in the case of any breach which requires more than thirty (30) days to cure, fails to commence and continue good faith efforts to cure such breach, provided that such cure shall be effected no less than ninety (90) days following such notice. In the event of any termination as specified herein, obligations which by their nature survive termination including but not limited to obligations to pay for services rendered, limitations of liability and warranty, rights to intellectual property and proprietary information, and similar items shall all survive termination of any nature.

**5. INDEPENDENT CONTRACTORS; SERVICES; APPROVALS.** Each party, its officers, agents and employees are at all times independent contractors to the other party. The Services are being delivered on an "as-is" basis and Epiq hereby makes no representation or warranty and disclaims all other express or implied conditions, representations and warranties including any implied warranties or conditions of merchantability, suitability, or fitness for a particular purpose, including any warranty relating to third party products or third party services. Epiq's warranty under this Agreement shall be limited to the re-running, at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of Epiq's performance of duties as referenced in this Agreement. Client agrees to provide Epiq notice of such inaccuracies within thirty (30) days of delivery of such report. Client agrees, represents and warrants to Epiq that, prior to delivery of any files, data or information ("Client Data") to Epiq, Client has obtained binding consents and approvals from all necessary persons and authorities, and has complied with all applicable regulations and laws, required by Client in order to allow Epiq to use the Client Data in connection with its Services.

**6. DATA PROTECTION MEASURES**. In connection with any specific legal compliance requirements (e.g., ITAR, EAR, HIPAA/HITECH, GLB, data privacy, PCI compliance) that may be required in connection with the Services, Client must provide Epiq with reasonable advance written notice of such requirements and information regarding the data types and classifications regarding the data provided by or on behalf of the Client to Epiq. Any breach of this Section 6 shall be considered a material breach of the Agreement.

**7. TAXES.** All fees charged by Epiq are exclusive of taxes and similar fees now in force or enacted in the future imposed on the Services. Client will be responsible for and direct pay any applicable taxes imposed on the Services by appropriate governmental authority(s) except for taxes based upon Epiq's net income, gross revenue or employment obligations. If invoices exclude such taxes that are subsequently determined to be a statutory obligation of Client, Client will be responsible for paying directly to the taxing authority or reimbursing Epiq any such excluded sales, use, excise, transaction or similar taxes plus interest and penalties. Epiq shall indemnify, defend and hold harmless Client from and against any tax, interest, penalties or other charges resulting from the non-payment or late payment of taxes related to Epiq's net income, gross revenue or employment obligations.

**8. RETURN OF CLIENT PROPERTY.** Upon the conclusion of the case and in the absence of court-ordered retention instructions, Epiq will provide Client with notice that upon the Client's written request, Epiq will return all property and material constituting Confidential Information belonging to Client within ninety (90) days or store hard copy documents for a period of no more than three (3) years at a monthly charge of $1.50 per box plus $.008 per image/record to compensate Epiq for its storage costs.

**9. INDEMNIFICATION.** Client shall indemnify, defend and hold harmless Epiq, its affiliates and their owners, members, managers, consultants, directors, officer, employees, and agents ("Agents") against any Losses incurred by them arising out of or in connection with or related to (a) any gross negligence or willful misconduct by Client or its Agents, or any misrepresentations made by such persons to Epiq or third parties in connection with this Agreement, (b) any breach of the terms of this Agreement by Client, (c) the handling of any payment by Epiq in connection with Client's instructions, including without limitation the imposition of any stop or void payment on any check or the wrongful dishonor of any check by Epiq at Client's instruction; (d) any breach of Section 6 hereto; and (e) any instruction or information provided to Epiq by Client in connection with the Services.

**10. CONFIDENTIALITY.** In connection with this Agreement, each of Epiq and Client (each, a "Disclosing Party") may disclose to the other party (the "Receiving Party") certain information that is marked or otherwise identified in writing as confidential or proprietary information of the Disclosing Party prior to or upon receipt by the Receiving Party; or which the Receiving Party reasonably should recognize from the circumstances surrounding such disclosure to be confidential or proprietary (the "CI"). Client agrees that no CI will contain any data subject to applicable United States export control laws. Client further agrees, represents and warrants to Epiq that, prior to delivery of any CI to



Epiq, Client has obtained binding consents and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all CI in connection with its Services.    "CI" shall not include information (a) that is or becomes generally known or available through no fault of the Receiving Party; (b) that is known by the Receiving Party prior to the time of disclosure by the Disclosing Party; (c) is or becomes available to the Receiving Party on a non-confidential basis from third party, who, to the Receiving Party's knowledge, had the right to make such disclosure without restriction; or (d) any disclosure required by applicable law or approved in writing by a duly authorized officer of the Disclosing Party.  Each Receiving Party shall use such CI only for the purposes of fulfilling their obligations hereunder, and not disclose to any third party any CI other than in connection with fulfilling the Receiving Party's obligations hereunder.  Each party agrees to use best efforts to protect the other party's intellectual property including without limitation inventions (whether or not patentable), concepts, ideas, processes, programs, trade secrets and know-how (collectively, "IP") and shall not during the term of this Agreement or thereafter utilize, reveal, or disclose any such IP.  Any IP relating to the software utilized or developed by Epiq during the course of this Agreement shall be the exclusive property of Epiq.  Client shall not: (a) modify, adapt, translate or create derivative works of the Epiq's IP or any part thereof; (b) lease, rent, loan, distribute, assign, sublicense, convey or otherwise transfer or encumber Epiq's IP; (c) translate, copy, reverse engineer, re-engineer, decompile, reverse compile, or disassemble Epiq's IP or any part thereof, nor attempt to discover or create the source code from the object code for Epiq's IP; (d) use Epiq's IP or any part thereof, for the benefit of any other person or entity; or (e) cause, assist or permit any third party to do any of the foregoing.

**11. LIMITATION ON DAMAGES.**  Under no circumstances will Epiq or its Agents be liable to the Client (whether in tort, contract, equity, warranty or otherwise) for any special, consequential, punitive, general, indirect or incidental damages arising out of relating to this Agreement or the performance of Services hereunder. Notwithstanding anything in this Agreement or any Work Order to the contrary, neither Epiq nor Client shall be liable for liabilities, costs, damages and expenses arising out of or related to a Force Majeure Event, provided that each party performs its obligations with respect to a Force Majeure Event, including, in the case of Epiq, following its business continuity procedures.  In no event shall Epiq's or its Agents' total liability to the Client for any claims, losses, costs, fines, settlements, penalties or damages, including court costs and attorney's fees (collectively, "Losses"), arising out of or related to this Agreement or the performance of Services hereunder, exceed the total amount paid by the Client to Epiq for the portion of the particular services which gave rise to the Losses.

**12. FORCE MAJEURE.** If performance by Epiq of any of its obligations hereunder is prevented by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war conditions, or by reason of any other matter beyond Epiq's reasonable control ("Force Majeure Event"), then such performance shall be excused and this Agreement shall, at Epiq's option, be deemed suspended during the continuation of such event and for a reasonable time thereafter.

**13. GOVERNING LAW.**  This Agreement shall be construed and controlled by the laws of the State of Oregon (without reference to its conflict of laws provisions).  Subject to Section 14, the state and federal courts located in Washington County, Oregon have exclusive jurisdiction with respect to any proceedings which may arise in connection with this Agreement, which courts have personal jurisdiction and venue over the parties for purposes hereof.

**14. ARBITRATION.**  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement (including these Terms and Conditions, all schedules hereto and any amendments) or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that Epiq may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

**15. GENERAL.**  If Epiq or any of its employees are deposed or required to testify in any judicial, arbitral or administrative proceedings, or produce documents or records through a subpoena or otherwise, Customer will be liable for all fees and expenses of Epiq related to such deposition, testimony or production as if Customer had requested the services pursuant hereto, regardless of whether the Agreement has terminated. Epiq maintains banking relationships with financial institutions, whereby those institutions may provide financial products and related banking services required in connection with the services hereunder.  Epiq may receive compensation from such institutions in connection with those relationships. This Agreement and the rights and obligations of Epiq and Client shall bind and inure to the benefit of their respective successors and assigns.   This Agreement represents the entire agreement between the parties and supersedes any existing agreement entered into by Epiq and Client relating to the subject matter hereof and may be modified only by a writing signed by the parties hereto.  All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein. Any waiver under this Agreement shall not constitute a waiver of any other right hereunder. This Agreement may be executed by facsimile or PDF signature and/or in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.  All notices required to be served hereunder shall be in writing, postage prepaid, address to the party to whom service is to be given, as provided herein, and shall be served upon the other party either personally or by registered or certified mail to the address below such party's signature.