**WOODROW & PELUSO, LLC**
Steven L. Woodrow (*pro hac vice*)
swoodrow@woodrowpeluso.com
Patrick H Peluso (*pro hac vice*)
ppeluso@woodrowpeluso.com
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

**THE AFTERGOOD LAW FIRM**
Aaron D. Aftergood (SBN 239853)
aaron@aftergoodesq.com
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

***Counsel for Plaintiff and the
Proposed Class***

**PATTERSON BELKNAP
WEBB & TYLER LLP**
Michael F. Buchanan (*pro hac vice)*
mfbuchanan@pbwt.com
Peter A. Nelson (*pro hac vice*)
pnelson@pbwt.com
Jeffrey C. Skinner (*pro hac vice*)
jskinner@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2350
Facsimile: (212) 336-2222

**MITCHELL SILBERG & KNUPP
LLP**
Jean Pierre Nogues (SBN 84445)
jpn@msk.com
2049 Century Park East, 18th Floor
Los Angeles, CA 90067
Telephone: (310) 312-3152
Facsimile: (310) 312-3100

***Counsel for Defendants Epiq
Systems, Inc. and Epiq Class Action
& Claims Solutions, Inc.***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN KARTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EPIQ SYSTEMS, INC., a Missouri corporation, and EPIQ CLASS ACTION & CLAIMS SOLUTIONS, INC., a Rhode Island corporation,<br><br>Defendants. | CASE NO. 8:20-cv-01385-CJC-KES<br><br>CLASS ACTION<br><br>**LOCAL RULE 37-2.1 JOINT STIPULATION REGARDING DISCOVERY DISPUTES**<br><br>Motion Hearing: Jan. 25, 2022, 10:00 AM<br>Discovery Cutoff Date:  June 23, 2022<br>Pre-Trial Conference Date:  Oct. 24, 2022<br>Trial Date:  Nov. 1, 2022 |

## TABLE OF CONTENTS

Page

I.   Joint Statement of Issues in Dispute ................................................. 1

II.   Plaintiff's Preliminary Statement ................................................... 1

III.   The Epiq Defendants' Preliminary Statement........................................ 4

IV.   Issue 1:  The Parties dispute whether the Epiq Defendants must
     produce the Mandiant Report................................................. 7

     A.   Plaintiff's Position ............................................... 8

          1.   The Epiq Defendants haven't shown the Mandiant
               Report is protected as attorney work-product.................... 8

          2.   The Epiq Defendants also fail to show the Mandiant
               Report is protected by the attorney-client privilege. .......... 14

     B.   The Epiq Defendants' Position ......................................... 15

          1.   The Mandiant Report is protected by the work
               product doctrine.................................................. 18

          2.   The Mandiant Report is also protected by the
               attorney-client privilege........................................ 22

V.   Issue 2:  The Parties dispute whether the Epiq Defendants must
     produce information related to Defendant Epiq Systems...................... 23

     A.   Plaintiff's Position ................................................ 28

     B.   The Epiq Defendants' Position ....................................... 31

          1.   Interrogatory No. 8 and Document Request No. 14
               seek information unrelated to Plaintiff's CCPA claim........ 32

          2.   Disputes concerning Interrogatory Nos. 1, 4, 5 and 7
               have been resolved or will be resolved with the
               production of forensic data related to the
               Ransomware Attack................................................ 34

          3.   Document Request No. 2. can be resolved with the
               production of relevant policies.................................. 35

I.      **Joint Statement of Issues in Dispute**

This case concerns a claim brought under the California Consumer Privacy Act ("CCPA") following a ransomware attack that affected the networks of Defendants Epiq Systems, Inc. ("Epiq Systems") and Epiq Class Action & Claims Solutions, Inc. ("Epiq Class Action") (together, the "Epiq Defendants"). There are two main issues in dispute: (1) the discoverability of the incident report (the "Report") prepared by FireEye, Inc., d/b/a Mandiant ("Mandiant") (or from any other third party) regarding the ransomware attack and (2) to what extent the Epiq Defendants must produce information related to Defendant Epiq Systems. The Parties held a meet and confer via telephone on November 11, 2021 in attempt to resolve these and other discovery issues. The Parties continue to discuss the other issues but remain in dispute regarding these two issues. In accordance with Local Rule 37-2.1, a copy of the order establishing the initial case schedule is attached to this stipulation as Ex. 1 and a copy of the order modifying the initial case schedule is attached to this stipulation as Ex. 2.  The Parties also attach the following as Exhibits:

- Ex. 3: Declaration of Michael Zeiger, dated Dec. 8, 2021 ("Zeiger Decl.")
- Ex. 4: Declaration of Michael F. Buchanan, dated Dec. 23, 2021 ("Buchanan Decl.")
- Ex. 5: Declaration of Lori Blackley, dated Dec. 23, 2021 ("Blackley Decl.")
- Ex. 6: Plaintiff's Letter to the Epiq Defendants, dated Nov. 3, 2021 ("Plaintiff's Ltr.")
- Ex. 7:  The Epiq Defendants' Letter to Plaintiff, dated Nov. 8, 2021 ("Epiq Defendants' Ltr.")

II.     **Plaintiff's Preliminary Statement**

Defendants were hit with a ransomware attack in late February 2020. As companies often do in the wake of such data breaches (or theft of any kind), Epiq

hired a third party to produce a report regarding the particulars of the incident—known as an "Incident Report." In general, such reports provide a wealth of detail regarding the attack, including the source, the timing and duration, the type of software used and the scope of any information that was accessed, compromised, and potentially exfiltrated.

In a letter sent in April 2020, Epiq identified Mandiant, an international cybersecurity firm, as one of the third parties it hired to investigate and issue a report in this case. On its website, Mandiant claims that "[s]ince 2004, [it] has been the first call for organizations around the world that are actively at risk from the most sophisticated cyber threats."

In his First Requests for the Production of Documents and First Set of Interrogatories, Plaintiff Karter squarely asked for a copy of the Incident Report produced by Mandiant (and any other vendors). Defendants objected on privilege grounds, asserting that the Incident Report is protected by the attorney-client privilege and the attorney work product doctrine (and, as to Epiq Systems, Inc., under the joint defense privilege and common interest privilege). Following receipt of these objections, Plaintiff's counsel reached out to counsel for Defendants to discuss the application of these privileges, explaining Plaintiff's position that such information was not protected from disclosure. During the Parties' meet and confer held via telephone on November 11, 2021, counsel for the Defendants confirmed their clients' intent to stand on the privilege objections and not produce the Incident Report or provide any details as the report's substance or conclusions.

As set forth below, although the discoverability of data breach incident reports—particularly the applicability of work product protections and attorney-client privilege—has been the subject of hotly contested litigation, the Epiq Defendants have not substantiated their work-product or attorney-client privilege

1  objections, and the Court should compel the disclosure of the Mandiant Incident
2  Report.

3     Additionally, the Defendants were both hit by the exact same ransomware
4  attack. This is because their systems are connected electronically—a fact that
5  Defendants' don't deny. Nevertheless, the Epiq Defendants refuse to produce
6  critical information related to or on behalf of Defendant Epiq Systems, Inc. on the
7  grounds that Plaintiff's personal information was supposedly stored on a server
8  belonging to Epiq Class Action Claims & Solutions, Inc. ("Epiq Class Action").
9  *See e.g.* Response to RTP No. 14 ("Defendants further object to this Request to the
10 extent it seeks information that pertains to Epiq Systems because Plaintiff has not
11 alleged that Epiq Systems was ever in possession of his Personal Information.")

12    Yet simply because Plaintiff's information was stored on a server nominally
13 belonging to Epiq Class Action doesn't mean that Epiq Systems, Inc. isn't a proper
14 defendant, nor does it obviate the Defendants' duty to provide responsive
15 information on behalf of that entity. Indeed, if Epiq Class Action were the only
16 named Defendant, then there wouldn't be a need to provide disclosures for Epiq
17 Systems, Inc. Likewise, if Epiq Systems, Inc. hadn't been hit by the same
18 ransomware attack, then Defendants' refusal to provide information related to Epiq
19 Systems, Inc. would perhaps carry some weight. But neither of those is true.
20 Rather, the two networks were connected such that the infiltration of one by the
21 ransomware attackers amounted to an infiltration (or the capacity to infiltrate) the
22 other. At this time no evidence has been provided to suggest that actual network
23 barriers, or even rudimentary security protocols, existed of a nature that would
24 prevent such joint infiltration. Rather, the connectivity between the two companies'
25 systems facilitated the attack on both of them. As such, any supposed attempts to
26 portray them as separate systems fails—while the two companies were and are
27 distinct legal entities, their computer systems were (and are) not.
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   The Epiq Defendants' Preliminary Statement

In February 2020, immediately after discovering that they had suffered a ransomware attack ("Ransomware Attack"), the Epiq Defendants retained Patterson Belknap Webb & Tyler LLP ("PBWT") as outside litigation counsel, to provide legal advice in connection with the attack concerning potential litigation, regulatory scrutiny, and the companies' disclosure and notice obligations, if any. To assist with the provision of legal advice to the Epiq Defendants, PBWT retained Mandiant—a consultant with expertise in conducting forensic investigations following cyberattacks, including ransomware attacks—to investigate the Ransomware Attack and provide PBWT with a report containing its analysis and conclusions to enable PBWT to provide legal advice to the Epiq Defendants.

While the Mandiant investigation was happening, Epiq Systems, using two other vendors (namely, IBM and Microsoft), worked diligently to respond to the attack, regaining access to maliciously encrypted files, restoring its systems, and remediating the attack in a matter of weeks.  Following these efforts, Epiq Systems publicly disclosed that although some files were encrypted by the Ransomware Attack and business operations were disrupted, it found no evidence that any data belonging to their clients—personal or otherwise—was exfiltrated or stolen in connection with the Ransomware Attack.

Despite that announcement, Plaintiff filed a lawsuit under the CCPA seeking statutory damages for himself and a putative class of California consumers. To prevail on his claim, Plaintiff must prove five separate elements:  (i) the defendant is a covered "business"; (ii) the Epiq Defendants possessed his "personal information;" (iii) his personal information was "exfiltrated"; (iv) his information was exfiltrated in a "nonencrypted and nonredacted" form; and (v) the exfiltration was a direct result of the Epiq Defendants' failure to "implement and maintain reasonable security procedures and practices."  *See* Cal. Civ. Code §§ 1798.150,

1798.140.  Once the record is developed, Plaintiff will be unable to meet his burden with respect to all but one of these elements.

In response to Plaintiff's discovery requests, the Epiq Defendants have agreed to produce information containing forensic data collected and reviewed by Mandiant in connection with its investigation of the Ransomware Attack.  They have also agreed to produce relevant policies applicable to Epiq Class Action's storage and security practices for personal information.  This proposed production is relevant to the issues of exfiltration, encryption, and the reasonableness of the security procedures of the domain that Epiq Class Action used to maintain Plaintiff's personal information at the time of the Ransomware Attack.  This production has yet to occur, but Plaintiff already asserts its inadequate and insists on expanding its scope.  Doing so is improper for two reasons.

*First*, Plaintiff maintains that the Epiq Defendants must produce the Mandiant Report.  But that Report is protected by the work product doctrine and the attorney-client privilege.  As to the work product doctrine, the facts set forth in the accompanying declaration of Michael Buchanan make clear that Mandiant conducted its investigation and prepared its report for PBWT to provide legal advice to the Epiq Defendants in anticipation of litigation or regulatory investigation or enforcement actions.  What is more, Plaintiff has already hired his own expert to review those materials and he can draw his own expert conclusions.  Plaintiff's desire to piggyback off his adversary's work product because it is less costly and more efficient cannot justify production of the Report.  As for the attorney-client privilege, PBWT's retention of Mandiant here is a textbook example of the *Kovel* doctrine:  PBWT required assistance from a non-attorney expert to assist PBWT in providing legal advice to the Epiq Defendants because PBWT lacked the skill, education, experience and training to analyze the complex forensic evidence and conduct a forensic investigation of the Ransomware Attack.

*Second*, Plaintiff lumps a number of apparently outstanding discovery disputes under the catch-all complaint that he is not going to receive any documents from Epiq Systems.  For starters, that is false.  Epiq Systems has already agreed to produce documents in its possession to the extent they are relevant to Plaintiff's CCPA claim.  And for some of the allegedly inadequate responses, Plaintiff failed to raise an issue about them in his discovery dispute letter.  And for one set of the requests—requests that ostensibly seek class member information—the Epiq Defendants maintain that the information Plaintiff seeks is irrelevant to the merits of his CCPA claim.  Specifically, Plaintiff demands that Epiq Systems search its vast computer databases across multiple, separate business units and produce documents to identify California residents whose "personal information" was on Epiq Systems' network when the Ransomware Attack occurred.  That information has no bearing on whether the personal information he provided to Epiq Class Action was exfiltrated or stolen.  For it to be even potentially relevant, Plaintiff must, at a minimum, first establish his CCPA claim.

Moreover, the declaration of Lori Blackley spells out why Plaintiff's sweeping requests for personal information are misguided and unduly burdensome.  Plaintiff's personal information was maintained separate and apart from the personal information maintained by other Epiq Systems' subsidiaries and business lines.  In addition, a request for production of documents from Epiq Systems – a conglomerate of business units with disparate business goals and separate corporate and IT infrastructure – potentially encompasses numerous unrelated lines of business and a massive amount of data from a variety of databases and other sources, all of which is unrelated to Plaintiff's only connection with the Epiq Defendants: the Epiq Class Action business.

For these reasons, the Court should not expand the scope of Epiq Systems' discovery obligations beyond what it has already agreed to produce.

JOINT STIPULATION REGARDING DISCOVERY DISPUTES

**IV.    Issue 1:  The Parties dispute whether the Epiq Defendants must produce the Mandiant Report**

The Parties dispute the sufficiency of the Epiq Defendants' Responses and Objections to Interrogatory No. 7 and Request to Produce No. 5, both of which seek information regarding the Incident Report Epiq procured from Mandiant and other vendors. The Interrogatory and Request are set forth verbatim as follows:

**Document Request No. 5:** Any and all data breach investigation reports related to the Data Breach Incident, including the Mandiant report referenced in Your April 20, 2020 letter.

**Response to Document Request No. 5:** In addition to the foregoing General Objections, Defendants object to this Request on the ground that the undefined phrase "investigation reports" is vague and ambiguous. Defendants further object to this Request because it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the local rules of this Court, relevant case law, or any other applicable privilege or immunity. Defendants will not produce any data breach investigation reports in response to this Request. Subject to and without waiving any general or specific objections, Defendants will produce non-privileged, responsive documents containing forensic data related to the Ransomware Attack, in their possession, custody, or control that can be located after a reasonable search, to the extent such documents or information exist.

**Interrogatory No. 7:** Describe the findings and results of any investigation into the Data Breach Incident.

**Response to Interrogatory No. 7:** In addition to the foregoing General Objections, Defendants object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Defendants further object to this Interrogatory because it seeks information that is exempt from discovery and protected from

7

disclosure by a privilege including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the local rules of this Court, and relevant case law. Subject to and without waiving any general or specific objections, Defendants aver that Epiq Systems and Epiq Class Action were the victims of the Ransomware Attack, which resulted in the encryption of certain files across their networks. There is no evidence that any client data held by Epiq Class Action was accessed, misused, or exfiltrated during the Ransomware Attack.

### A.   Plaintiff's Position

#### 1.   The Epiq Defendants haven't shown the Mandiant Report is protected as attorney work-product.

With respect to work product, the doctrine applies to "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)...." *In re Rutter's Data Sec. Breach Litig.*, No. 1:20-CV-382, 2021 WL 3733137, at *2 (M.D. Pa. July 22, 2021) (quoting *In re Cendent Corp. Securities Litigation*, 343 F.3d 658, 662 (3d Cir. 2003)); *see also* Fed. R. Civ. P. 26(b)(3). While it is true that "a party may not ordinarily discover documents and tangible things that are prepared in anticipation of litigation by or for another party or its representative," Fed. R. Civ. P. 26(b)(3)(A), "the privileges derived from the work product doctrine are not absolute." *In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 192 (E.D. Va. 2019) (citing *United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). The party seeking the protection of the work product doctrine has the burden of proving that the doctrine applies. *Conoco, Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982); *see also In re Cap. One Consumer Data Sec. Breach Litig.*, No. 1:19MD2915 (AJT/JFA), 2020 WL 3470261, at *3 (E.D. Va. June 25, 2020) ("Ultimately, the party 'claiming the

protection,' here Capital One, 'bears the burden of demonstrating the applicability of the work product doctrine.'") (citing *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011)).

Generally speaking, a Defendant like Epiq must first show that the incident report was "created in anticipation of litigation." *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 1:19MD2915 (AJT/JFA), 2020 WL 3470261, at *3 (E.D. Va. June 25, 2020) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)). Second, where the relevant document may be used for both litigation and business purposes, the court must determine that litigation was "the driving force behind the preparation of" the requested document. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 967 F.2d at 984. Perhaps critically, with respect to the second prong, some courts have found that "work product that would have otherwise been produced 'in the ordinary course of business' does not receive work product immunity." *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 1:19MD2915 (AJT/JFA), 2020 WL 3470261, at *3 (quoting *Nat'l Union*, 967 F.2d at 984).

Only one court in this District has meaningfully delved into this particular issue. *See In re Experian Data Breach Litig.*, No. SACV1501592AGDFMX, 2017 WL 4325583, at *1 (C.D. Cal. May 18, 2017) (unpublished opinion). In *In re Experian*, Magistrate Judge Guilford stated that:

> a "because-of" test is used to determine whether a document was prepared in anticipation of litigation, which means that a document doesn't need to be prepared *exclusively* for use in litigation. [*In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (emphasis in original)]. "The 'because of' standard does not consider whether litigation was a primary or secondary motive behind the creation of a document." *Id.* at 908. "Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the document was created because of anticipated litigation,

and would not have been created in substantially similar form but for the prospect of that litigation." *Id.* (internal quotations omitted).

*In re Experian Data Breach Litig.*, No. SACV1501592AGDFMX, 2017 WL 4325583, at *1 (C.D. Cal. May 18, 2017) (Internal quotations omitted); *see also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1239 (D. Or. 2017) ("Courts…must view 'the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'"). Finding that the totality of the evidence indicated that the incident report was procured by Experian's counsel to assist them with the litigation, Magistrate Judge Guilford denied the plaintiff's motion to compel disclosure of the incident report in that case. *Id.* at *2. ("Mandiant was hired by Jones Day to assist Jones Day in providing legal advice in anticipation of litigation. This is supported by declarations as well as the fact that Mandiant's full report wasn't given to Experian's Incident Response Team. If the report was more relevant to Experian's internal investigation or remediation efforts, as opposed to being relevant to defense of this litigation, then the full report would have been given to that team.")

Respectfully, the Court should reach a different conclusion here. Until it provided its portion of this joint statement, Epiq hadn't provided any information to demonstrate that the Mandiant Report was procured by its lawyers to help them prepare for the litigation and that it wasn't shared with Epiq's internal incident response team—or that Epiq even had such a team. Rather, according to the information provided for the first time through the Epiq Defendants' portions of this joint statement, Epiq admits that complete copies were sent to Epiq's Chief Information Officer and the then-serving Vice President of Information Security. Hence, it wasn't merely shared with outside and inhouse counsel. Epiq fails to

provide any information regarding whether any reports generated by Microsoft or IBM were shared internally.

Furthermore, Epiq hasn't provided any evidence to suggest that any of the Incident Reports "would not have been created in substantially similar form but for the prospect" of litigation or that the report wouldn't have otherwise been produced in the ordinary course of its business. It defies logic to think Epiq wouldn't have performed an internal investigation even if no threat of litigation existed. In any case, until Epiq provided its portion of this joint statement, no contract with Mandiant or description of the statement of work had been produced, and there is no information that speaks to the form of the report or how it may have differed if produced solely for Epiq, and no contracts have been provided for IBM or Microsoft. Indeed, the objections provided by the Epiq Defendants offer little to substantiate their grounds at all—the objections themselves are boilerplate, wholly bereft of any detail.

Moreover, in response to a discovery dispute letter, Epiq's counsel stated that:

> Interrogatory 7. Plaintiff has asked Defendants to "confirm" that its response to Interrogatory 7 "consists of a description of the findings and results of the Mandiant investigation or any other investigation into the Ransomware Attack." Defendants cannot provide the requested "confirmation" one way or the other because the Mandiant Report, including its conclusions, are privileged under both the attorney-client privilege and the attorney work product doctrine. If Plaintiff wishes to probe Defendants' response to Interrogatory 7 further, including its basis, Plaintiff can do so during discovery by reviewing Defendants' documents and expert reports and by taking depositions.

*See* Ex. 7, Epiq Defendants' Ltr. at 2. This has it backwards. It is Epiq's burden to provide sufficient grounds for its objections—it is not Plaintiff's responsibility to ferret out such grounds through documents (none of which have been produced to date) and depositions. Additionally, Plaintiff needs the Incident Report to prepare his case and to adequately prepare for the depositions of Epiq's lay and expert

11

witnesses. To hear Epiq tell it, Plaintiff needs to depose Epiq's witnesses on the grounds for the objections, and, if he finds them lacking support, he can then move to compel and re-depose those same witnesses once (and if) the report is produced. This does little to promote judicial economy. Rather, Epiq is required to substantiate the basis for its objections and has failed to do so.

To the extent Epiq has shown that any of the reports were ordered by Epiq's lawyers and not provided to its in-house team, the Court should still order the report be disclosed. It is well-settled that, "litigants cannot escape their obligations to disclose underlying facts by communicating them to an attorney or having an attorney direct the fact investigation." *In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 193 (E.D. Va. 2019); citing *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 6122012, at *3 (E.D. Va. July 16, 2019); *Upjohn Co. v. United States*, 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *see also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 296 F. Supp. 3d 1230, 1243 (D. Or. 2017) (citing *Lumber v. PPG Indus., Inc.*, 168 F.R.D. 641, 646 (D. Minn. 1996) (noting that the plaintiffs could not "shield their investigation ... merely because they elected to delegate their ordinary business obligations to legal counsel."). Yet that is precisely what Epiq would be seeking to do here.

And Magistrate Judge Guilford himself explained that "documents protected by [the work product] doctrine may still be discovered if 'they are otherwise discoverable under Rule 26(b)(1)' and if 'the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *In re Experian Data Breach Litig.*, No. SACV1501592AGDFMX, 2017 WL 4325583, at *1 (C.D. Cal. May 18, 2017) (citing Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii)). Such is the case here: the Mandiant Report is plainly discoverable under Rule 26(b)(1) as it is relevant to the

issues in the lawsuit, and Plaintiff cannot obtain such materials through other means—the perpetrators of the ransomware attack are unknown and only Epiq knows its own internal systems and the information that it (or perhaps its lawyers, acting as conduit) provided to Mandiant to facilitate the investigation. Indeed, as set forth in the attached Declaration of Mike Zeiger, a principal Threat Intelligence Researcher at AdvIntel, a cybercrime threat prevention and loss avoidance firm, "The incident report prepared in connection with the Ryuk ransomware attack on Epiq's systems is only available to Epiq and any third party involved in creating the report, and it is the most effective and accurate means of understanding the attack and surrounding circumstances." *See* Ex. 3, Zeiger Decl. ¶ 7. As Mr. Zeiger explains:

> An incident reported prepared by Epiq or a third party, detailing the extent of the ransomware attack and the efficacy of any countermeasures present at the time of the attack, is necessary for the purposes of threat assessment. Without access to the incident report, a third party can draw its own conclusions but cannot know the precise extent of the attack and associated security failures.

Zeiger Decl. ¶ 6. Any incident reports should be disclosed accordingly.

Finally, even though Epiq hasn't substantiated its refusals to provide the IBM or Microsoft Reports, it is clear that it relies on the same objections. Indeed, in response to Plaintiff's request for any such reports, the Epiq Defendants responded in part that "Defendants will not produce any data breach investigation reports in response to this Request." Such objections should be overruled with respect to the IBM and Microsoft reports, to the extent they exist, as well.

In sum, Epiq hasn't provided a sufficient basis for applying work-product protection here and the Mandiant Report (and potentially other reports from IBM and Microsoft) is discoverable in any case.

### 2.    The Epiq Defendants also fail to show the Mandiant Report is protected by the attorney-client privilege.

Epiq has even more difficulty showing that the attorney-client privilege applies to shield the Mandiant Report. "Blanket assertions of the attorney-client privilege are 'extremely disfavored.'" *Radford v. Brand*, No. 04-CV-1855BENJMA, 2005 WL 6141975, at *3 (S.D. Cal. Aug. 4, 2005) (quoting *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002)); *see also Cameron v. City of El Segundo*, No. 2:20-CV-04689-JFW-JC, 2021 WL 3466324, at *11 (C.D. Cal. Apr. 30, 2021) ("Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed.") (citing *Weil v. Investment/ Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)).

The privilege "encompasses communications made by a client's employees to counsel, acting as such, to enable counsel to be in a position to give legal advice to the client," as well as to "communications made to counsel, acting as such, by independent contractors and other third parties who are functional equivalents of employees." *In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-6213 MMM(JCX), 2010 WL 11468584, at *4 (C.D. Cal. June 29, 2010). That said, "[t]he privilege does not apply to communications with or involving third parties." *Id.* at *5 (citing *United States v. Palmer*, 536 F.2d 1278, 1281 (9th Cir. 1976)). As with the work-product protection, the burden to establish all the elements of the privilege is on the party asserting the privilege. *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000).

Applied here, Epiq has offered nothing to substantiate its blanket assertion that the Mandiant Report is protected by the attorney-client privilege. Again, no contract or scope of work had been produced between Epiq or its attorneys on the one hand and with Mandiant on the other. While Epiq for the first time attaches a

14

supposed agreement, this untested information still leaves unclear who hired Mandiant and the purpose. There is also nothing to substantiate any putative claim by Epiq that Mandiant is functionally an employee or independent contractor. Rather, Mandiant is a wholly separate entity who Epiq apparently retained, perhaps through its lawyers to shield the document, to provide it, Epiq, with business guidance—not primarily to assist it's lawyers with the provision of legal advice. *See e.g. Philips N. Am. LLC v. KPI Healthcare, Inc.*, No. SACV1901765JVSJDEX, 2021 WL 4775639, at *8 (C.D. Cal. July 16, 2021) ("The question is whether the particular communication at issue was related primarily to the seeking of legal advice; if so, the communication is privileged"). Even less support is offered with respect to the IBM and Microsoft reports.

Because Epiq's discovery responses and follow up fail to show that Epiq's lawyers at Patterson Belknap Webb & Tyler LLP retained Mandiant, IBM, or Microsoft to provide those attorneys with guidance so that the lawyers could, in turn, provide Epiq with legal advice—as opposed to being hired to assist Epiq with understanding how its system was compromised and infiltrated—Epiq has failed to carry its burden of showing that the attorney-client privilege prevents disclosure of the Mandiant Report, IBM report, or Microsoft report here. Further, their belated attempt to cure these deficiencies with respect to Mandiant through documents appended to the Epiq Defendants' portion of this joint statement fail to satisfy its discovery obligations.

At the conference held between counsel, counsel for Plaintiff proposed that Epiq withdraw these objections and produce the reports. Epiq's counsel declined to do so indicating that Epiq would stand on its objections.

**B.    The Epiq Defendants' Position**

The Epiq Defendants engaged PBWT as outside counsel to represent them in connection with the Ransomware Attack, which included legal advice on statutory,

regulatory and contractual obligations and in anticipation of litigation.  Ex. 4, Buchanan Decl. ¶¶ 4, 6.  PBWT determined that in order to provide adequate legal advice to the Epiq Defendants regarding their obligations under state and federal law, and to formulate a strategy to defend against litigation and respond to regulatory action, it would need an expert to conduct a forensic investigation of the Ransomware Attack.  *Id.* ¶ 6.  As a result, on February 29, 2020, PBWT hired Mandiant, pursuant to the terms of a statement of work (the "Statement of Work") finalized on March 6, 2020, to conduct a forensic investigation of the Ransomware Attack and provide PBWT with an expert report providing its conclusions.  *Id.* ¶ 5.

The Statement of Work specifically defines the privileged nature and purpose of its engagement of Mandiant.  *Id.* ¶ 9.  Section 1 ("Description of Services") states that "[t]he objective of this professional services engagement is to assist [PBWT] in providing legal advice to [Epiq Systems] with responding to [Epiq Systems'] suspected security incident and in anticipation of litigation that may rise from the incident."  *Id.* ¶ 9; *id.* Ex. A at 1.  Description of Services further states that "[a]ll communications between Mandiant and [PBWT]" and "[a]ll communications and work product produced for [PBWT] in the course of th[e] engagement" would be "confidential and privileged."  *Id.* ¶ 10; *id.* Ex. A at 1.  Although Epiq Systems had a preexisting services agreement with Mandiant, Mandiant's prior work was different and separate from the investigation PBWT engaged Mandiant to perform in connection with the Ransomware Attack.  *Id.* ¶ 11. Significantly, Epiq Systems separately and directly engaged two other vendors, IBM and Microsoft, to focus on remediation and restoration efforts for the businesses.  *Id.* ¶ 12.

Mandiant conducted its investigation by copying and preserving forensic evidence from Epiq Systems' system.  *Id.* ¶ 17.  That evidence is available to Plaintiff in discovery and can be used by Mr. Zeiger to conduct his own analysis

and draw his own conclusions.  *See* Defendants' Response to RTP No. 5.  Among other things, PBWT instructed Mandiant to focus on identifying whether the Ransomware Attack involved the access, acquisition, or exfiltration of client data. Ex. 4, Buchanan Decl. ¶ 17.  Focusing the investigation in that manner was important in assisting PBWT to provide legal advice to the Epiq Defendants.  *Id.* During the drafting process of the Report, Mandiant provided drafts to PBWT for comment, discussion, and revision.  *Id.* ¶ 18.  Via phone calls and email, PBWT requested additional information be included and provided feedback and edits, with a focus on areas that PBWT determined were key issues for the Epiq Defendants' legal obligations under state and federal law and in defense of potential litigation and response to government investigations.  *Id.* ¶ 19.

By this point in the Mandiant investigation, the Epiq Defendants were no longer dealing with hypothetical litigation.  On March 4, 2020, Epiq Systems received a letter from Plaintiff's counsel demanding the immediate cure of alleged violations under the CCPA or monetary payment in the amount specified in the CCPA. *Id.* ¶ 14; *id.* Ex. B.

Mandiant provided a final draft of the Report to PBWT on or about May 6, 2020.  *Id.* ¶ 20.  Mandiant did not provide the final Report to the Epiq Defendants or any other party.  *Id.*  The Report was created in a form that would assist PBWT in providing legal advice to the Epiq Defendants.  *Id.* ¶ 21.

On May 7, 2020, PBWT emailed a password-protected copy of the final Report to Alison Wisniewski (Chief Legal Officer and Secretary at Epiq Systems) and Mark Euler (Vice President of Legal at Epiq Systems).  *Id.* ¶ 22.  In turn, on May 11, 2020, Ms. Wisniewski forwarded a password-protected copy of the final Report to Carlos Gonzalez (Chief Information Officer at Epiq Systems) and Roger Hardgrove (the then-serving Vice President of Information Security at Epiq Systems).  *Id.* ¶ 23.  In total, only four employees at Epiq Systems have been

provided a copy of the Report – two of whom were in-house counsel and two who led Epiq Systems' information security program.  *Id.* ¶ 24.  PBWT has not shared the Report with anyone else, including government regulators, other vendors engaged by the Epiq Defendants, or Plaintiff, who first requested the Report in April 2020.  *Id.* ¶ 25.  PBWT used and continues to use the Report to inform its legal advice to the Epiq Defendants, including in defense of this litigation in addition to providing other legal advice to the Epiq Defendants regarding other aspects of the Ransomware Attack.  *Id.* ¶ 26.

> **1.     The Mandiant Report is protected by the work product doctrine.**

"The work product doctrine is a 'qualified privilege' that protects 'certain materials prepared by an attorney acting for his client in anticipation of litigation.'" *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) (quoting *United States v. Nobles*, 422 U.S. 225 237-238 (1975)).  For the privilege to apply, a document (1) "must be prepared in anticipation of litigation or for trial," and (2) "must be prepared by or for another party or by or for that other party's representatives."  *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)* ("*Torf*"), 357 F.3d 900, 907 (9th Cir. 2004).

The Ninth Circuit uses a "because of" standard to determine whether the document was prepared "in anticipation of litigation."  *Id.*  In applying this standard, a court must "consider[] the totality of the circumstances and afford[] protection when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation."  *Id.* at 908.  The standard does not turn on "whether litigation was a primary or secondary motive behind the creation of a document." *Id.*

The facts surrounding Epiq System's engagement of separate vendors to handle remediation and restoration efforts and the Epiq Defendants' engagement of PBWT, PBWT's subsequent engagement of Mandiant to assist it, Plaintiff's threat of litigation, and PBWT's supervision of the drafting and controlled dispersal of the Report, all confirm that the Report constitutes protected work product.  To begin, there is no doubt that the Epiq Defendants faced a substantial risk of litigation once it announced it was the victim of the Ransomware Attack.  It is common for consumers to file lawsuits against companies that suffer from a cybersecurity attack shortly after the attack is disclosed to the public.  *See, e.g.*, *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014).  And here, Plaintiff's counsel in fact threatened Epiq Systems with litigation on March 4, 2020 based on purported CCPA violations, less than a week after the Ransomware Attack occurred—and *well before the Report was complete.*  Ex. 4, Buchanan Decl. ¶ 14.  Thus, there is no doubt that the Epiq Defendants reasonably anticipated litigation when Mandiant was conducting its investigation for PBWT and when it provided the final Report to PBWT.

Immediately after the Epiq Defendants retained PBWT, PBWT engaged Mandiant to assist PBWT in providing legal advice to the Epiq Defendants in anticipation of litigation.  *Id.* ¶¶ 4-5.  PBWT provided Mandiant instructions and supervised its investigation.  *Id.* ¶¶ 15-16.  PBWT also provided feedback and edits to drafts of the Report, specifically in areas that PBWT deemed to be key issues for the Epiq Defendants' legal obligations.  *Id.* ¶¶ 18-19.  The Report was never shared with the vendors that the Epiq Defendants had separately retained to focus on the remediation efforts.  *Id.* ¶¶ 12, 20, 25. Nor was it shared widely throughout Epiq Systems.  *Id.* ¶¶ 22-24.  Rather, a password protected version was shared only with

1   in-house counsel and two senior leaders of Epiq's information security program.

2   *Id.*

3        These facts make this case analogous to *In re Experian Data Breach*

4   *Litigation*.  No. SA-CV-15-01592-AGD-FMX, 2017 WL 4325583 (C.D. Cal. May

5   18, 2017).  Like here, the forensic investigator (also Mandiant) was hired by

6   outside counsel (Jones Day) to assist outside counsel in providing legal advice to

7   the company (Experian) in anticipation of litigation.  *Id.* at *2.  Like here, the

8   forensic report was not widely disclosed or distributed or shared with the

9   company's entire "[i]ncident [r]esponse [t]eam." *Id.*  And, like here, the forensic

10   investigator previously performed work for the company but that prior work was

11   separate from the "work [the forensic investigator] did for [the company]

12   regarding" the at-issue attack.  *Id.* at *3.  On these facts, the Court concluded:  "If

13   the report was more relevant to [the company's] internal investigation or

14   remediation efforts, as opposed to being relevant to the defense of this litigation,

15   then the full report would have been given to the [incident response team]." *Id.* at

16   *2.  The Court should reach that same conclusion in this case:  the Epiq

17   Defendants retained separate companies—IBM and Microsoft—to help with its

18   remediation efforts, while PBWT retained Mandiant "to assist PBWT in providing

19   legal advice . . . in anticipation of litigation that may arise from" the Ransomware

20   Attack.

21        Furthermore, the fact that the Report was provided to PBWT first and its

22   subsequent very limited disclosure within Epiq makes this case distinguishable

23   from other cases in which similar forensic reports were more widely distributed.

24   *See In re Rutter's Data Sec. Breach Litig.*, No. 1:20-CV-382, 2021 WL 3733137,

25   at *3 (M.D. Pa. July 22, 2021) (observing that the expert "provided its report to

26   [the company] when it was completed and there is no evidence that it was provided

27   first to [outside counsel]"); *Guo Wengui v. Clark Hill, PLC*, 338 F.R.D. 7, 12

28

(D.D.C. 2021) (observing that the forensic report was shared with "select members of the [company's] leadership and IT team" and the "FBI as part of the FBI's investigation of the cyber incident" (internal quotation marks omitted)); *In re Cap. One Consumer Data Sec. Breach Litig.*, No. 1:19-MD-2915 (AJT/JFA), 2020 WL 2731238, at *5 (E.D. Va. May 26, 2020), *aff'd,* 2020 WL 3470261 (E.D. Va. June 25, 2020) ("[I]t appears that at least several members of [the company's] cyber technical, enterprise services, information security and cyber teams were provided with a copy of the Mandiant Report."); *In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 195 (E.D. Va. 2019) ("[I]n *Experian*, the full report was withheld from defendants' incident response team. Here, defendants have not represented that the full report was withheld from them.").

Finally, Plaintiff is unable overcome the work product protection by claiming he has a "substantial need" for the Report.  Fed. R. Civ. P. 26(b)(3). Plaintiff's bald assertion that he "needs the Incident Report" (see supra p. 11) and that he "cannot obtain such materials through other means" are untrue. Mr. Zeiger can conduct a similar investigation because he will have access to the same information and materials that Mandiant relied on; Plaintiff's expert has no basis to suggest otherwise.  Ex. 3, Zeiger Decl. ¶ 6.  The Epiq Defendants can provide Plaintiff with the information and materials that Mandiant reviewed during its investigation and Plaintiff can have Mr. Zeiger review that material and offer expert opinions of his own.  While it may be more expensive and less convenient to hire his own expert, "[a] showing of expense or inconvenience to Plaintiff[] in hiring an expert to perform the same analysis isn't sufficient to overcome the protection of the work product doctrine." *Experian*, 2017 WL 4325583, at *3 (citing *Fletcher v. Union Pac. R.R. Co.,*194 F.R.D. 666, 671 (S.D. Cal. 2000)).

For these reasons, the Court should conclude that the Report is protected by the work product doctrine.

## 2. The Mandiant Report is also protected by the attorney-client privilege.

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). The privilege exists where "(1) [] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at [the client's] instance permanently protected (7) from disclosure by [the client] or by the legal adviser, (8) unless the protection be waived." *Id.* (quoting *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)). The privilege "may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice." *Id.* This form of the privilege, also referred to as the *Kovel* privilege, "benefit[s] []society where an attorney needs assistance from a non-attorney to adequately render legal advice because the attorney lacks the knowledge or expertise to render legal advice based on a full understanding of the underlying facts or non-legal issues at play." *Todd v. STAAR Surgical Co.*, No. CV-14-05263-MWF (RZx), 2015 WL 13388227, at *7 (C.D. Cal. Aug. 21, 2015).

This rationale for applying the *Kovel* privilege is precisely why the Report should be deemed privileged in this case. The Epiq Defendants retained PBWT to provide legal advice regarding reporting obligations under various state breach notification laws, federal law, and customer contracts, and defending and responding to anticipated litigation and regulatory action. In order to provide that legal advice, PBWT determined that it had to engage an expert to conduct a forensic investigation. Buchanan Decl. ¶ 6. It is indisputable that the Report was "prepared at [PBWT's] request, in the course of an attorney-client relationship, for the purpose of advising and defending [PBWT's] client[]." *United States v.*

*Judson*, 322 F.2d 460, 462 (9th Cir. 1963) (applying the *Kovel* privilege). Furthermore, PBWT and the Epiq Defendants have been diligent to ensure that the Report has not been disclosed to anyone else.  Mandiant only shared the Report with PBWT; PBWT only shared a password-protected version with two members of Epiq Systems' in-house legal team; and Epiq Systems' in-house legal team only shared it (also password protected) with two additional senior information security employees.  Buchanan Decl. ¶¶ 22-23.  Nobody else—not a regulator, not a vendor, not law enforcement, not third parties, and virtually no employees of the Epiq Defendants and not Plaintiff—has received the Report.  *Id.* ¶¶ 22-25. Accordingly, the Court should find that the Report is also protected by the attorney-client privilege and that that privilege has not been waived.

## V.   Issue 2:  The Parties dispute whether the Epiq Defendants must produce information related to Defendant Epiq Systems.

The Parties also dispute the sufficiency of the Epiq Defendants' Responses and Objections to Interrogatory Nos. 1, 4, 5, 7 & 8 and Request to Produce Nos. 2 & 14 on the grounds that Epiq refuses to provide relevant information regarding Defendant Epiq Systems, Inc. The Interrogatories and Requests are set forth verbatim as follows:

**Interrogatory No. 1:** Identify and Describe Your complete factual basis for Your contention, if any, that Epiq Class Action & Claims Solutions, Inc. was not impacted by the Data Breach Incident.

**Response to Interrogatory No. 1:** In addition to the foregoing General Objections, Defendants object to this Interrogatory as overbroad and unduly burdensome. Defendants further object to this Interrogatory as the phrase "impacted by" is vague, ambiguous, and irrelevant. Defendants further object to this Interrogatory to the extent it seeks information that is protected by the attorney-client privilege, work-product immunity, the joint defense privilege, the common interest privilege, or any other applicable privilege or immunity. Subject to and without waiving any general or specific objections, Defendants aver

that Epiq Systems and Epiq Class Action were the victims of a ransomware attack in late February 2020 (the "Ransomware Attack"), which resulted in the encryption of certain files across their networks. Defendants do not contend that the Ransomware Attack did not have any impact on Epiq Class Action. There is no evidence, however, that any client data held by Epiq Class Action was accessed, misused, or exfiltrated during the Ransomware Attack.

**Interrogatory No. 4:** Identify the complete factual basis for Your contention, if any, that Ann Bowdler's machine was not connected to the Epiq Class Action & Claims Solutions, Inc. domain at the time of the Data Breach Incident.

**Response to Interrogatory No. 4:** In addition to the foregoing General Objections, Defendants object to this Interrogatory as overbroad and unduly burdensome. Defendants further object to this Interrogatory as the phrases "Ann Bowdler's machine" and "not connected to" are vague and ambiguous. Defendants are unaware of any contention that Ann Bowdler's machine was not connected to any Epiq Class Action domain. In any event, subject to and without waiving any general or specific objections, Defendants aver that Ann Bowdler is not an employee of Epiq Class Action and, therefore, she did not have permission to access any Epiq Class Action applications or files at the time of the Ransomware Attack.

**Interrogatory No. 5:** Identify and Describe the complete factual basis for Your contention, if any, that Plaintiff's Personal Information was not exfiltrated or stolen during the Data Breach Incident.

**Response to Interrogatory No. 5:** Subject to and without waiving any general or specific objections, Defendants refer to their response to Interrogatory No. 1.

**Interrogatory No. 7:** Describe the findings and results of any investigation into the Data Breach Incident.

**Response to Interrogatory No. 7:** In addition to the foregoing General Objections, Defendants object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Defendants further object to this Interrogatory because it

seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the local rules of this Court, and relevant case law. Subject to and without waiving any general or specific objections, Defendants aver that Epiq Systems and Epiq Class Action were the victims of the Ransomware Attack, which resulted in the encryption of certain files across their networks. There is no evidence that any client data held by Epiq Class Action was accessed, misused, or exfiltrated during the Ransomware Attack.

**Interrogatory No. 8:** Describe Your ability to Identify all Persons whose Personal Information was stored on Your logical network or domain at the time of the Data Breach Incident.

**Response to Interrogatory No. 8:** In addition to the foregoing General Objections, Defendants object to this Interrogatory on the ground that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Defendants further object to this Interrogatory to the extent it seeks information that pertains to Epiq Systems because Plaintiff has not alleged that Epiq Systems was ever in possession of his Personal Information. Defendants aver that it is not feasible from a technical perspective to identify the requested information from Epiq Class Action as it existed at the time of the Ransomware Attack.

**Document Request No. 2:** All Documents sufficient to Identify Your document handling policy.

**Response to Document Request No. 2:** In addition to the foregoing General Objections, Defendants object to this Request on the ground that the undefined phrase "document handling policy" is vague and ambiguous. Defendants further object to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Defendants further object to this Request on the ground that it does not specify a relevant time period. Subject to and without waiving any general or specific objections, Epiq Class Action will produce any non-privileged policies maintained by or applicable to Epiq Class Action concerning the storage of and security procedures applicable to Personal Information in their possession, custody, or control that can

be located after a reasonable search. Epiq Systems will not produce documents in response to this request.

**Document Request No. 14:** All Documents sufficient to Identify all Persons whose Personal Information was stored on Your logical network or domain at the time of the Data Breach Incident.

**Response to Document Request No. 14:** In addition to the foregoing General Objections, Defendants object to this Request on the ground that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Defendants further object to this Request to the extent it seeks information that pertains to Epiq Systems because Plaintiff has not alleged that Epiq Systems was ever in possession of his Personal Information. Epiq Class Action further objects to this Request on the ground that it is not feasible from a technical perspective to identify the requested information as it existed at the time of the Ransomware Attack. Defendants will not produce documents in response to this Request.

The Epiq Defendants maintain that their Responses and Objections to Interrogatory Nos. 2 & 3 and Request to Produce Nos. 4 & 5 must be considered in adjudicating this dispute. The Interrogatory and Requests are set forth verbatim as follows:

**Interrogatory No. 2:** Identify and Describe Your complete factual basis for Your contention, if any, that the logical networks of Epiq Class Action & Claims Solutions, Inc. and Epiq Systems, Inc. are not connected.

**Response to Interrogatory No. 2:** In addition to the foregoing General Objections, Defendants object to this Interrogatory as the phrases "logical networks" and "connected" are vague and ambiguous. Defendants further object to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense in this litigation. Subject to and without waiving any general or specific objections, Defendants aver that Epiq Class Action and Epiq Systems are separate and distinct legal entities that store some of their data on shared servers. Defendants do not contend that the computer networks of Epiq Class

Action and Epiq Systems were not connected at the time of the Ransomware Attack**.**

**Interrogatory No. 3:** Identify any and all network barriers that exist between Epiq Systems, Inc. and Epic Class Action & Claims Solutions, Inc.

**Response to Interrogatory No. 3:** In addition to the foregoing General Objections, Defendants object to this Interrogatory as overbroad and unduly burdensome. Defendants further object to this Interrogatory as the phrase "network barriers" is vague and ambiguous, and the request to identify "any and all network barriers" is overbroad and unduly burdensome. Defendants further object to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense in this litigation. Subject to and without waiving any general or specific objections, Defendants aver that at the time of the Ransomware Attack, there were significant barriers of access between the data of Epiq Class Action and Epiq Systems. In particular, Epiq Class Action data and applications were stored on one domain ("AMER"), while Epiq Systems applications and data were stored on two other domains ("US CORP" and "US CUST"). Other than information technology ("IT") personnel and system administrators, no Epiq Systems employees had access to the domain used by Epiq Class Action and no Epiq Class Action employees had access to the domains used by Epiq Systems. The active directory domain for AMER was separate from the active directory domains for US CORP and US CUST. Network rules also existed that prevented data traffic between the domains used by Epiq Systems and the AMER domain.

**Document Request No. 4:**  All Document sufficient to Identify the active directory schema from the time of the Data Breach Incident, including all domain trusts.

**Response to Document Request No. 4:**  In addition to the foregoing General Objections, Defendants objects to this Request on the ground that it is overbroad, unduly burdensome, and not proportional to the needs of the case. Defendants further object to this Request on the ground that the undefined phrases "active directory schema," "from the time of the Data Breach Incident," and "domain trusts" are vague and ambiguous.  Subject to and without waiving any general or specific

objections, Defendants will produce non-privileged, responsive documents that identify any relevant active directory schema that existed at the time of the ransomware attack on Epiq Systems and Epiq Class Action in late February 2020 (the "Ransomware Attack"), in their possession, custody, or control that can be located after a reasonable search, to the extent such documents exist.

**Document Request No. 5:**  Any and all data breach investigation reports related to the Data Breach Incident, including the Mandiant report referenced in Your April 20, 2020 letter.

**Response to Document Request No. 5:**  In addition to the foregoing General Objections, Defendants object to this Request on the ground that the undefined phrase "investigation reports" is vague and ambiguous. Defendants further object to this Request because it seeks information that is exempt from discovery and protected from disclosure by a privilege including, without limitation, the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the common interest privilege, the Federal Rules of Civil Procedure, the local rules of this Court, relevant case law, or any other applicable privilege or immunity.  Defendants will not produce any data breach investigation reports in response to this Request. Subject to and without waiving any general or specific objections, Defendants will produce non-privileged, responsive documents containing forensic data related to the Ransomware Attack, in their possession, custody, or control that can be located after a reasonable search, to the extent such documents or information exist.

## A.    Plaintiff's Position

Epiq hasn't provided a sufficient basis for withholding information relating to Epiq Systems, Inc. Although Epiq claims that information stored on Epiq Systems, Inc.'s computer system should be protected from disclosure because Plaintiff's information was alleged stored on Epiq Class Action's system, this is a distinction without a difference. As explained in the Zeiger Declaration, "Epiq Systems, Inc.'s and Epiq Class Action & Claims Solutions, Inc.'s information systems were part of a shared network. Epiq has one active directory domain—a

broad root level domain with multiple subdomains. Despite perhaps being separate legal entities, Epiq's computer networks were essentially one and the same." Zeiger Decl. ¶ 4. Indeed:

> The ransomware attack that occurred impacted the entire shared network…[T]he bad actor responsible for the ransomware attack entered a subdomain and was subsequently able to access, and did access, the root domain encompassing the entirety of Epiq's network. Any divisions or subdomains of Epiq's network were equally vulnerable to the ransomware attack because the root domain was accessed, and no network barriers separate the subdomains. Thus, the attackers had the same access to personal information possessed by Epiq Class Actions as they had to the personal information possessed by Epiq Systems.

Zeiger Decl. ¶ 5. As such, had the ransomware attack been limited to Epiq Class Actions, or had the attackers been unable to access the entire system and had been somehow limited to solely the systems assigned to Epiq Class Actions, then perhaps Defendants would have some basis for asserting that information/data stored on Epiq Systems, Inc.'s computer network should be off limits in discovery. But that is not the case here. Far from it, the Defendants essentially shared a single computer system—a shared network with "one active directory domain". The attackers were able to exploit this and access information stored across the entire system.

It is of no significance that some of the domains were used by Epiq Class Actions while others were ostensibly used by Epiq Systems, Inc.—the entire system was accessible through a single attack. As will be demonstrated at the class certification stage, a common question for all of the putative class members will ask whether Epiq's security protocols across its entire system were reasonable (and as a hearing on the merits will show, they were not). For discovery purposes, what matters is that all of the class member data at issue in this case was accessible via a single system in the same attack—the ransomware attackers didn't need to

1  separately seek unauthorized access into each entity's computer network because
2  they were the same network.

3  Indeed, the Court's November 9, 2020, Order on Epiq's first Motion to
4  Dismiss supports Plaintiff's position. At the time, Epiq Systems was the only
5  defendant in the case and Epiq moved to dismiss, arguing that "Plaintiff cannot
6  show that his injury is fairly traceable to Defendant's challenged actions because if
7  anyone wronged him, it was Epiq Class Action, not Defendant." (Dkt. 43 at 3.) The
8  Court granted Plaintiff's request for jurisdictional discovery and leave to amend
9  and held:

> In the Court's view, the key question relevant to whether Plaintiff has
> standing in this case—and therefore whether the Court has
> jurisdiction—is whether Plaintiff's social security number could have
> been on Defendant's systems at the time of the ransomware attack. If
> the answer to that question is no, Defendant's alleged failure to
> maintain reasonable security protocols in violation of California law
> could not have been what harmed Plaintiff (if Plaintiff were harmed at
> all) and caused him to suffer an alleged lifetime risk of identity theft.
> Even if the O'Connor Declaration shows, as Defendant argues, that
> Plaintiff did not submit his personal information to Defendant, it does
> not show that Plaintiff's information could not have been on
> Defendant's systems or servers and thereby made vulnerable in the
> ransomware attack.

20  (Dkt. 43 at 3-4.) Thus, the Court has already held that the "key question" is
21  whether Plaintiff's information could have been on Epiq Systems' systems or
22  servers—not whether Epiq Systems and Epiq Class Action are separate legal
23  entities. And, more broadly, following the November 2020 Order on its motion to
24  dismiss, Epiq's attorneys proposed that, in lieu of jurisdictional discovery, Plaintiff
25  simply file an amended complaint adding the Epiq Class Action as a defendant in
26  addition to Epiq Systems. Epiq now apparently wishes to proceed as if its first

motion to dismiss was granted and Epiq Systems is no longer a defendant subject to discovery. The record shows otherwise.

Epiq's analogy to espn.com and Disney doesn't hold water. If the facts were to show that espn.com and Disney shared a computerized network and were set up in such a manner so as to allow hackers performing a ransomware attack to gain access to both companies' information simultaneously, then there wouldn't be a basis for shielding Disney from its discovery obligations simply because it is ESPN's parent company. Any computer system that was linked in such a manner that allowed the hackers to gain access in one attack would be subject to disclosure and inspection.

Finally, Epiq's insistence that Plaintiff must first prove his claims under the CCPA to be entitled to discoverable information regarding the class again has it backwards—whether a class may be maintained is to be decided *before* the Court addresses the merits of the case. As such, the Court should accord little weight to Epiq's argument that Plaintiff must first show he will succeed on his claims at summary judgment or trial.

Hence, try as they may to shield relevant information pertaining to Epiq Systems, Inc. from being discoverable in this case, Defendants cannot rely on the fact that the Defendants are two separate legal entities to avoid disclosure. A single system was used, and that system was the subject of a single ransomware attack. As such, the Court should overrule Defendants' objections and compel Defendants to answer discovery on behalf of Epiq Systems, Inc., which remains a named defendant in these proceedings.

## B.  The Epiq Defendants' Position

Plaintiff mischaracterizes this dispute.  His contention that the Epiq Defendants refuse to provide any documents from Epiq Systems is simply not true. The Epiq Defendants have already "agree[d] to produce policies maintained by or

applicable to Epiq Class Action concerning the storage of and security procedures

applicable to Personal Information," "even if those policies are maintained or were

generated by Epiq Systems."  Ex. 7, Epiq Defendants' Ltr. at 3 (addressing

Plaintiff's RTP No. 2).  The Epiq Defendants have also agreed to produce "any

relevant active directory schema that existed at the time of the [R]ansomware

[A]ttack" and "documents containing forensic data related to the Ransomware

Attack," without limiting either category to documents solely in the possession of

Epiq Class Action.  Defendants' Response to Plaintiff's RTP Nos. 4, 5.

In addition to this mischaracterization, Plaintiff fails to specifically address a

single response to an Interrogatory or Document Request.  When separated out, it

becomes even more clear that his attempt to squeeze more out of the Epiq

Defendants is inappropriate.

### 1.     Interrogatory No. 8 and Document Request No. 14 seek information unrelated to Plaintiff's CCPA claim.

Identifying individuals whose personal information was stored on the

entirety of Epiq Systems various IT systems at the time of the Ransomware Attack

has no relevance as to Plaintiff's CCPA claim.  Plaintiff provided his personal

information to Epiq Class Action.  Rather than help establish any one of the five

elements of his claim, Plaintiff's requests are nothing more than an attempt to gain

information on potential class members.  Such information could only be

potentially relevant if Plaintiff establishes all of the elements of his CCPA claim.

These requests also rest on an oversimplification.  Plaintiff gave his Personal

Information to Epiq Class Action. And the Epiq Defendants do not contend that the

"computer networks of Epiq Class Action and Epiq Systems were not connected at

the time of the Ransomware Attack."  Defendants' Response to Plaintiff's

Interrogatory No. 2.  Therefore, according to Plaintiff, it's fair game to seek

discovery as to any and all personal information on Epiq Systems' network.  This

1   argument incorrectly treats any connection between Epiq Class Action and Epiq
2   Systems as the key to unlock discovery as to everything under the Epiq Systems
3   umbrella, including unrelated subsidiaries and business lines.

4          Under Plaintiff's view, a hypothetical data breach plaintiff who gives his
5   personal information to ESPN.com and then has his data stolen as a result of a data
6   breach affecting, but limited to, ESPN.com would be entitled in discovery to gain
7   information on persons whose personal information was provided to a Walt Disney
8   resort merely because both companies are controlled by The Walt Disney
9   Company.  "Because discovery must be both relevant and proportional, the right to
10  discovery, even plainly relevant discovery, is not limitless."  *Novoa v. Geo Grp.,*
11  *Inc.*, No. 5:17-CV-02514-JGB-(SHKx), 2020 WL 8515060, at *2 (C.D. Cal. May
12  22, 2020) (applying Fed. R. Civ. P. 26(b)(1)).  The hypothetical plaintiff's pursuit
13  of unlimited discovery of The Walt Disney Company would run afoul of these
14  basic tenets of relevance and proportionality.  So too does Plaintiff's request here.

15         Epiq Systems, like The Walt Disney Company, is a large conglomerate with
16  multiple subsidiaries and business lines, in addition to a large, complex computer
17  network that hosts "data for different purposes, under different circumstances and
18  pursuant to contracts that are unique to the subsidiary or business line that provides
19  the service."  Ex. 5, Blackley Decl. ¶¶ 6, 8.  Plaintiff's sweeping requests would
20  require Epiq Systems to produce the personal information of its bankruptcy
21  subsidiary, which hosts court documents and case data for approximately 36
22  million bankruptcy cases, and its eDiscovery subsidiary, which processes upwards
23  of 70 terabytes of client data per month.  *Id.* ¶¶ 9-10.  "In total, Epiq Systems and
24  its subsidiaries and business lines ingested an average of 74 terabytes of data each
25  month in 2021 on behalf of its clients."  *Id.* ¶ 8.  Demanding such a burdensome
26  search is in no way proportional to the needs of this case, especially since it has no
27  relevance to the merits of Plaintiff's claim.

28

And these requests that seek personal information from other Epiq subsidiaries and business lines, some of which were not even affected by the Ransomware Attack, make even less sense when one considers how siloed off Epiq Class Action is from the other Epiq subsidiaries and business lines. *Id.* ¶ 7. Contracts with its clients and its own privacy policy mandate that the information Epiq Class Action receives can only be used for limited purposes and cannot be disclosed to any third party. *Id.* ¶¶ 13, 15. Epiq Class Action utilizes proprietary software applications not used by other Epiq subsidiaries and business lines. *Id.* ¶ 11. And with the exception of Epiq Systems' information technology personnel who have access to the systems for the limited purpose of proving support and maintenance, only Epiq Class Actions employees have access to the data Epiq Class Action receives. *Id.* ¶ 17.

> ### 2. Disputes concerning Interrogatory Nos. 1, 4, 5 and 7 have been resolved or will be resolved with the production of forensic data related to the Ransomware Attack.

The Epiq Defendants "do not contend that the Ransomware Attack did not have any impact on Epiq Class Action." Defendants' Response to Plaintiff's Interrogatory No. 1. Furthermore, the Epiq Defendants have already informed Plaintiff that "Ann Bowlder was not an employee of Epiq Class Action and, therefore, did not have permission to access any Epiq Class Action applications or files at the time of the Ransomware Attack." Defendants' Response to Plaintiff's Interrogatory No. 4. What is more, Plaintiff's discovery dispute letter does not raise any specific issue with these responses. *See* Ex. 6, Plaintiff's Ltr. at 1-4. Thus, any disputes concerning the Epiq Defendants' responses to Interrogatories 1 and 4 have been resolved.

To the extent Interrogatory Nos. 1 and 4 are roundabout attempts at seeking the Report and its conclusions (like Interrogatory Nos. 5 and 7), that information is

privileged under the work product doctrine and attorney-client privilege, for the reasons set forth in the Epiq Defendants' position on the discovery dispute pertaining to the Report.  Furthermore, the Epiq Defendants will provide Plaintiff with the materials that Mandiant relied on in creating the Report.  *See* Defendants' Response to RTP No. 5.  Plaintiff's expert can then review those materials and draw his own conclusions about the exfiltration (or lack thereof) of Plaintiff's personal information.

### 3. Document Request No. 2. can be resolved with the production of relevant policies.

The Epiq Defendants have "agree[d] to produce policies maintained by or applicable to Epiq Class Action concerning the storage of and security procedures applicable to Personal Information," "even if those policies are maintained or were generated by Epiq Systems."  Defendants' Response to RTP No. 2.

Plaintiff cannot articulate a reason as to why policies that are inapplicable to Epiq Class Action have any bearing on his CCPA claim, which asserts that the personal information he provided to *Epiq Class Action* was exfiltrated or stolen. Plaintiff has not alleged that his Personal Information was ever in possession of Epiq Systems or another Epiq Systems' subsidiary or business line.  So any policy addressing how those other subsidiaries and business lines stored personal information has no nexus to Plaintiff's claim.  Thus, Plaintiff is not entitled to anything more than what the Epiq Defendants have said they are willing to produce.

Dated: December 28, 2021              Respectfully submitted,

/s/ Patrick H. Peluso

**WOODROW & PELUSO, LLC**

35

1
2
3
4
5
6

Steven L. Woodrow (*pro hac vice*)
swoodrow@woodrowpeluso.com
Patrick H. Peluso (*pro hac vice*)
ppeluso@woodrowpeluso.com
3900 East Mexico Avenue, Suite 300
Denver, CO 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

7
8
9
10
11

**THE AFTERGOOD LAW FIRM**
Aaron D. Aftergood (SBN 239853)
aaron@aftergoodesq.com
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

12
13

*Counsel for Plaintiff and the Proposed Class*

14
15

Dated: December 28, 2021         /s/ Jean Pierre Nogues

16
17
18
19
20
21
22
23
24

**PATTERSON BELKNAP WEBB & TYLER LLP**
Michael F. Buchanan (*pro hac vice)*
mfbuchanan@pbwt.com
Peter A. Nelson (*pro hac vice*)
pnelson@pbwt.com
Jeffrey C. Skinner (*pro hac vice*)
jskinner@pbwt.com
1133 Avenue of the Americas
New York, New York 10036
Telephone: (212) 336-2110
Facsimile: (212) 336-2111

25
26
27
28

**MITCHELL SILBERG & KNUPP LLP**
Jean Pierre Nogues (SBN 84445)
jpn@msk.com
2049 Century Park East, 18th Floor

36

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Los Angeles, CA 90067
Telephone: (310) 312-3152
Facsimile: (310) 312-3100

***Counsel for Defendants Epiq Systems, Inc.
and Epiq Class Action & Claims Solutions, Inc.***

JOINT STIPULATION REGARDING DISCOVERY DISPUTES